J. T. Hinton and Son, Complainants, Appellees, *v.* The Employers' Liability Assurance Corporation, Ltd., Defendant, Appellant.

(*Jackson,* April Term, 1933.)

Opinion filed June 24, 1933.

GILLILAND & GILLILAND, for complainants, appellees.

METCALF, METCALF & APPERSON, for defendant, appellant.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

J. T. Hinton and Son, complainants, operate an automobile ambulance, in connection with an undertaking business. In response to a call, their ambulance was sent to the home of Mrs. Belle Hall, in the City of Memphis, for the purpose of conveying her to a local hospital. A stretcher, with which the ambulance was equipped, was carried into the house, and Mrs. Hall was carried thereon from her bed to the ambulance by the ambulance driver and his assistant, servants of complainants. One of the stretcher bearers slipped on a muddy terrace and fell to his knees, as they were approaching the ambulance, but before they had reached it, and the stretcher dropped about six inches. There was no immediate complaint of resulting injury, but subsequently Mrs. Hall suffered a miscarriage, which she attributed to a jolting she received when the stretcher bearer slipped and fell. Suits for damages were filed by Mrs. Hall and her husband, in the aggregate sum of $45,000. In these suits the plaintiffs claimed that the stretcher was permitted to strike the ground violently. The suits were successfully defended by complainants and their attorneys, whom they employed and paid.

Complainants sue to recover the expenses of defending said suits, $1587, under a contract of automobile liability insurance, issued on their ambulance by the de-

fendant corporation. The contract obligated the insurer to defend any suits alleging injuries covered by the contract, notwithstanding such suits might be "wholly groundless."

The Chancellor and Court of Appeals have concurred in holding the complainants entitled to recover, and the cause is before us by *certiorari* heretofore granted on the petition of the insurer. Assignments of error present only two grounds for reversal: (1) That the contract of insurance does not cover the accident by which Mrs. Hall claimed to have been injured; and (2) that the fee of $1500 paid by complainants to their attorneys for successfully defending the two damage suits was unreasonably large.

The contract of insurance consists of a printed form, with written additions and alterations. The principal clause provides that it covers bodily injuries accidentally sustained by any person or persons, "as the result of the ownership, maintenance, operation, or use" of the described automobile.

The contract described and identified the automobile insured as a "Cunningham Ambulance;" and a rider attached to the contract canceled the stipulations and agreements of the printed form which would have rendered the insurance inoperative while the automobile was being used "for renting or livery use or the carrying of passengers for a consideration." This cancellation was made "in consideration of the premium for which this policy is written."

The question we have for determination is whether the accidental injury claimed to have been inflicted by the driver or his assistant, of the insured automobile ambulance, upon a person being carried upon a stretcher for

the purpose of becoming a passenger for hire in the ambulance, was an injury sustained as the result of the operation or use of the ambulance, within the purview and application of the insurance contract.

█ The contract contains no words expressly limiting the scope or application of the phrase "resulting from the ownership, maintenance, operation, or use" of the described automobile; and this general and broad language must be construed with reference to the subject matter and the nature of the risk involved, with due regard to the objects and intentions of the parties as the same may be gathered from the whole instrument. 1 Couch, Cyc. of Insurance Law, sec. 174.

In *Panhandle Steel Products Co.* v. *Fidelity Union Casualty Co.* (Texas Court of Civil Appeals), 23 S. W. (2d) 799, an injury sustained by a pedestrian struck by an iron beam, while it was being unloaded from a parked truck, was held to have resulted from the use of the truck, within the application of an insurance contract, containing the same language as in the case before us. Of that language the Texas Court of Civil Appeals said: "It will be noted, further, that the language used in the liability clause of the policy is broad and general in its scope, and not restricted by any words to the effect that the injuries covered by that clause must be the 'proximate' result of the use of the truck, or that the injury must be sustained while the truck was being driven, or the result of collision or overturning, etc."

In *Quality Dairy Company* v. *Fort Dearborn Casualty Underwriters* (St. Louis Court of Appeals, Missouri), 16 S. W. (2d), 613, the contract in suit covered injuries suffered "by the reason of ownership, maintenance, or use" of the described automobile. Of this language the court

observed that the defendant's obligation to indemnify plaintiff was not limited to cases where the truck itself produced the injury, but that the contract was expressly drawn in "terms broad enough to cover all claims arising by reason of the use of the truck."

In harmony with those cases is the rule of construction which we quote from *Maness* v. *Life and Casualty Insurance Company*, 161 Tenn., 41, 28 S. W. (2d) 339:

"To justify recovery on a policy of insurance it is not necessary that the peril insured against be the cause of the loss in the sense that it is the nearest cause in point of time or place. If the peril insured against be the efficient, predominating cause of the loss, it is regarded as the proximate cause thereof, although the result was brought about by a train of events set in motion by the particular peril and operating with reasonable certainty to occasion the loss."

A stipulation of facts, entered into by the parties and submitted to the Chancellor as a part of the proof, contains the following:

"That at the time defendant solicited complainant to take said policy, the ordinary, usual and customary operation and use of said ambulance necessarily and imperatively required that a stretcher be used in connection therewith, and that unless a stretcher was used by complainant in connection with said ambulance, complainant could not use it as such; that the stretcher was the detachable part of the ambulance on which the sick and injured persons, who were unable to move themselves and who need the use of an ambulance, were placed in order to be carried to and from the ambulance, and on which they rested and were carried while the automotive

part of the equipment of the ambulance was in motion; that defendant knew it was insuring an ambulance."

In *Panhandle Steel Products Co.* v. *Fidelity Union Casualty Co., supra,* the owner of the insured automobile truck was engaged in the business of selling and delivering structural steel and iron. Its employes used the truck to deliver a beam, 18 feet long and 8 or 10 inches wide. At the place of delivery, the truck was backed up to the curb, and the beam was being moved across the sidewalk into the building. When only about one-half of the beam was off the truck, the plaintiff passed on the sidewalk and was struck by the beam, receiving injuries for which she sued. Holding that the accident resulted from the "use" of the truck, within the meaning of the insurance contract, the Texas court said:

"The act of unloading the automobile was not an act separate and independent of the use of the truck, but was a step incident to the use and necessary to accomplish the purpose thereof. And, since it followed in a natural and continual sequence from the use, it would seem to follow logically that the act of unloading would not preclude a holding that the use of the truck was the proximate cause of the injury, if, indeed, such a holding be necessary to support a recovery by the plaintiff against the defendant."

 If the accident assigned by Mrs. Hall as the cause of her injury had occurred while the stretcher was being placed in the ambulance, or while it was being removed therefrom, we would be strongly inclined to follow the argument of the case just cited, and hold it the result of the use of the ambulance. But the authorities and liberal rule of construction cited do not, in our opinion, justify the further extension of the terms of the con-

tract, so as to include the accident in suit. When the stretcher was dropped the ambulance had not been reached. Mrs. Hall was being transported to the ambulance, and not by it or on it. The transportation of sick persons from bed to street curb was a necessary incident to the conduct of complainants' business of operating an ambulance for hire, but was not a necessary incident to the operation or use of the ambulance as a motor vehicle, as the actual placing or removal of persons therein and therefrom would be. Complainants were insured against liability arising from the operation and use of the vehicle, and not against liability arising from the conduct of their business. In order to sell the use of the ambulance to the public, it was necessary for complainants to provide stretcher bearers and to convey persons to the ambulance, but that, we think, was merely a business custom or convenience, as was the maintenance of a telephone through which calls for the ambulance might be received. The transportation from bed to curb was preparatory to the use of the ambulance, but until the ambulance was reached its use in the transportation of the patient had not begun. The hazard of the transportation of persons to the ambulance was not within the terms of the contract and was not assumed by the insurer.

The decree of the Court of Appeals will therefore be reversed, and the suit dismissed, at complainants' cost.