## O. T. HATTLEY, d/b/a Hattley's Auto Service, Appellant, v. LUMBERMAN'S MUTUAL CASUALTY COMPANY, Appellee.—383 S. W. (2d) 764.

Western Section. June 26, 1964.

Certiorari Denied by Supreme Court November 2, 1964.

Ray Bratcher, Pierce, Rice, Taliaferro, Bratcher & Pierce, Memphis, of counsel, for appellant.

Edward W. Kuhn and Crawford McDonald, McDonald, Kuhn, McDonald, Crenshaw & Smith, Memphis, of counsel, for appellee.

BEJACH, J. In this cause, Hon. R. H. Spragins, a member of the Bar of Jackson, Tennessee, by consent of the parties, sat as special judge in the place of Judge J. B. Avery, Sr., who was ill.

O. T. Hattley, d/b/a Hattley's Auto Service, of Memphis, Tennessee, who was plaintiff in the lower court, appeals from a judgment of the Circuit Court of Shelby County dismissing his suit against the appellee, Lumberman's Mutual Casualty Company, which company was defendant in the lower court. In this opinion, the parties will be referred to, as in the lower court, as plaintiff and defendant.

The plaintiff designates his appeal in this cause as an appeal in the nature of a writ of error, but same is a simple appeal under the provisions of Section 27-303, T.C.A., the cause having been tried in the lower court without the intervention of a jury. Plaintiff's suit is against defendant on an insurance policy issued by defendant to the plaintiff, and especially on an endorsement attached and added to said policy, which provides that for an additional premium of $5.00, "it is agreed that such insurance as is afforded by the policy for property damage liability applies also to injury to or destruction of property in charge of the insured arising out of the ownership, maintenance or use of any hoist for raising the entire automobile for the lubricating or

servicing thereof at the premises, subject to the following provisions:

"1. This insurance does not apply to the injury to or destruction of property owned, occupied or used by or rented to the insured.

"2. The limit of the Company's liability for this insurance is $5,000, each accident."

Neither Provision 1 nor Provision 2 has any bearing on this litigation. The damages recoverable, if any, are stipulated as being $1798.94, and the sole question presented for adjudication is whether or not, under the facts of this case, which are undisputed, the defendant is liable under the terms of its policy, and especially under the terms of the endorsement quoted above. The facts are not stipulated, but defendant offered no witnesses in its own behalf, and did not even cross examine the witnesses who testified in behalf of plaintiff.

The policy involved in this cause insures plaintiff in the operation of his service station and garage at 1761 Madison Avenue, Memphis, Tennessee, known as Hattley's Auto Service. On July 21, 1962, defendant had in his service station a Cadillac ambulance left there by one of his customers for repair of the gas tank on said ambulance. In order to repair the tank, the defendant had the ambulance placed on the hoist and raised to a height of about six feet from the concrete floor of the garage or service station. The gasoline from the tank was being caught in a 16 gallon drum, approximately 32 inches high. The top of said drum was approximately 3 feet below the neck of the gas tank. According to the testimony of plaintiff's witnesses, which is undisputed, this was the customary method of draining gas tanks.

The gas tank on this particular ambulance had no drain plug, and it became necessary to disconnect the filler pipe of the gas tank. When this was done, the gasoline in the tank gushed out and approximately one and one half to two gallons of gasoline was spilled onto the concrete floor. Plaintiff's employees immediately began spreading a floor-dry compound to absorb the spilled gasoline, but before all of it could be absorbed, fumes formed from same and were ignited, apparently from a pilot light of a steam generating device which was $27\frac{1}{2}$ feet distant from the hoist. The ambulance on the hoisting device was damaged in the amount stipulated, but other vehicles in the garage were rolled outside to safety. Plaintiff reported the matter to defendant, and an adjuster came out to interview plaintiff about it. Defendant denied liability, however, on the ground that the loss or damage involved was not covered under the terms of plaintiff's policy. Plaintiff brought suit, seeking in his declaration a recovery of approximately $2,000, plus the penalty of 25% provided by law in cases where the insurance company refuses in bad faith to settle, and a jury was demanded. Later, however, both the demand for a jury and the claim for the 25% penalty were waived; and the parties stipulated that the damages recoverable, if any, amounted to $1798.94.

After a trial before Hon. John W. Wilson, Judge of Division II of the Circuit Court of Shelby County, a judgment was entered in favor of the defendant, from which plaintiff appealed to this Court. In this Court, as appellant, plaintiff has filed two assignments of error, but these present the single question of whether or not judgment should have been entered for the plaintiff rather than for the defendant. Defendant contends that

its policy, including the endorsement quoted, does not cover the loss involved, because that loss did not arise out of the ownership and maintenance or use of the plaintiff's hoist for raising the damaged automobile, there being no causal connection between the use of that hoist and the damage to the ambulance thereon.

Numerous authorities are cited in the briefs of able counsel for both parties, including many decisions from jurisdictions other than Tennessee. After a careful consideration of all of the cases cited, we have concluded that we need not consider or discuss any of the cases cited from jurisdictions other than Tennessee. A few of the Tennessee cases cover the situation sufficiently to control our decision.

The case which, in our opinion, most strongly supports the contention of defendant is J. T. Hinton & Son v. Employers' Liability Assurance Corp, 166 Tenn. 324, 62 S.W.(2d) 47. In that case, the insurance policy involved contained a clause which "obligated the insurer to defend any suits alleging injuries covered by the contract, notwithstanding such suits might be 'wholly groundless.'" J. T. Hinton & Son, in connection with its undertaking business, operated an automobile ambulance insured under the policy involved, and, in connection with the operation of that ambulance, a stretcher was used to carry patients to and from the ambulance. On one occasion, while answering a call from a Mrs. Hall, and while carrying Mrs. Hall on the stretcher, but before reaching the ambulance, one of the attendants stumbled and dropped Mrs. Hall, from the result of which fall she claimed to have suffered a miscarriage. She sued J. T. Hinton & Son, and the insurance company refused to defend the suit, although called upon to do so. The suit

was successfully defended by J. T. Hinton & Son, after which they sued the insurance company for the expense of defending that suit. The Chancery Court and the Court of Appeals sustained that suit, but the Supreme Court granted certiorari and reversed. After discussing a case relied on by complainant, the Supreme Court's opinion, written by Mr. Justice Swiggart, says:

"If the accident assigned by Mrs. Hall as the cause of her injury had occurred while the stretcher was being placed in the ambulance, or while it was being removed therefrom, we would be strongly inclined to follow the argument of the case just cited, and hold it the result of the use of the ambulance. But the authorities and liberal rule of construction cited do not, in our opinion, justify the further extension of the terms of the contract, so as to include the accident in suit. When the stretcher was dropped, the ambulance had not been reached. Mrs. Hall was being transported to the ambulance, and not by it or on it. The transportation of sick persons from bed to street curb was a necessary incident to the conduct of complainants' business of operating an ambulance for hire, but was not a necessary incident to the operation or use of the ambulance as a motor vehicle, as the actual place or removal of persons therein and therefrom would be. Complainants were insured against liability arising from the operation and use of the vehicle, and not against liability arising from the conduct of their business. In order to sell the use of the ambulance to the public, it was necessary for complainant to provide stretcher bearers and to convey persons to the ambulance, but that, we think, was merely a business custom or convenience, as was the maintenance of a telephone

374

through which calls for the ambulance might be received. The transportation from bed to curb was preparatory to the use of the ambulance, but until the ambulance was reached its use in the transportation of the patient had not begun. The hazard of the transportation of persons to the ambulance was not within the terms of the contract and was not assumed by the insurer." Hinton v. Liability Assurance Corp., 166 Tenn. 329-330, 62 S.W.(2d) 47.

In the instant case, counsel for defendant contend that since there was no causal connection between the use of the hoisting device which elevated the ambulance and the fire which caused damage to it, the reasoning of the Supreme Court in the Hinton case should be applied to the facts of the instant case and defendant excused from liability. On the other hand, counsel for plaintiff contends that it is not necessary for plaintiff to show a causal connection to entitle him to a recovery in this cause, and that, since the damage occurred, "arising out of the ownership, maintenance or use of any hoist for raising the entire automobile for the lubricating or servicing thereof at the premises", plaintiff is entitled to recover under the terms of the endorsement attached to his policy. They cite and rely on the cause of National Bank of Commerce v. New York Life Insurance Co., 181 Tenn. 299, 181 S.W.(2d) 151. In that case, the beneficiary of the insured was held to be entitled to recover double indemnity under a policy which provided for double indemnity in the case of accidental death, notwithstanding the policy also contained a provision which said the clause providing for double indemnity, "will not apply if the insured's death resulted * * * from engaging as a passenger, or otherwise, in submarine or aeronautic op-

erations.'' The insured had been killed in an airplane crash while insured was riding as a passenger. From the opinion of the Supreme Court, written by Mr. Justice Chambliss, later Chief Justice, which reversed a decree of the lower court sustaining a demurrer to the bill, we quote as follows:

"(3) In any event, enough has been said to demonstrate that the familiar rule which resolves the doubt in case of ambiguity against the insurer must be given application. Reference has been made to Hartol Products Co. v. Prudential Ins. Co. and Equitable Life Assur. Soc. v. Dyess. Other cases cited in the brief of appellant which sustained the view expressed are: Day v. Equitable Life Assurance Society, 10 Cir., 83 F(2d) 147, certiorari denied 299 U.S. 548, 57 S.Ct. 11, 81 L.Ed. 404; Provident Trust Co. of Philadelphia v. Equitable Life Assurance Society, 316 Pa. 121, 172 A. 701; Massachusetts Protective Ass'n v. Bayersdorfer, 6 Cir., 105 F(2d) 595.

"(4) The brief quotes extensively from the opinions in the New York case, the Arkansas case, Day v. Equitable Life Assurance Society, supra, and Provident Trust Co. of Philadelphia v. Equitable Life Assurance Society, supra. In the last mentioned case, it was said, applicable here, 'the assured was a passenger, but he was not engaged in an aeronautic expedition.' (316 Pa. 121, 172 A. 702.) In conclusion, we quote with approval from the New York case the following:

" 'The obvious ambiguity is emphasized by the ease with which the defendant could have excluded fare-paying passengers upon an isolated flight when not

engaged in the occupation or calling of aviation or
aeronautics.'

"The average person applying for a policy would
no more think of a passenger on an airplane as being
engaged in aviation or aeronautics than he would think
of a passenger on a railroad train as being engaged
in railroading or a passenger on an ocean liner as
being engaged in navigation.

"And further, 'But insurance contracts, above all
others, should be clear and explicit in their terms. They
should not be couched in language as to the construc-
tion of which lawyers and courts may honestly differ.
In a word, they should be so plain and unambiguous
than men of average intelligence who invest in these
contracts may know and understand their meaning and
import.' " Nat. Bk. of Comm. v. N. Y. Life Ins. Co.,
181 Tenn. 304-305, 181 S.W.(2d) 153.

Aside from the fact that the decision of the Supreme
Court in National Bank of Commerce v. New York Life
Insurance Co. is later in time than the earlier decision
in Hinton v. Liability Assurance Corp., relied on by
counsel for defendant, we think it is more in harmony
with the earlier decision of the Supreme Court in the
case of Maness v. Life & Casualty Ins. Co. of Tennessee,
the facts of which case were more nearly like the facts
of the instant case. In that case, a policy was involved
which provided for liability in favor of the insured, "if
the insured shall be struck by a vehicle which is being
propelled by steam, cable, electricity, naphtha, gasoline,
horse, compressed air or liquid power, while insured is
walking or standing on a public highway." The insured
was walking along a newly graveled highway when an

automobile, propelled by gasoline, going at a rapid rate of speed in the same direction, passed him and knocked or otherwise caused a rock to be thrown which struck plaintiff and put out one of his eyes. The lower court sustained a demurrer to the declaration, but the Supreme Court reversed. From the Supreme Court's opinion, written by Mr. Chief Justice Green, we quote as follows:

"The demurrer made the point that the facts stated in the declaration did not constitute a case of liability under the contract of insurance which the defendant had undertaken.

"The policy of insurance contained no exceptions to the obligation of the contract above set out which are relevant to the facts of this case.

"We are of opinion that the analogies of the law of insurance require that the judgment sustaining the demurrer be reversed.

"(1) To justify recovery on a policy of insurance, it is not necessary that the peril insured against be the cause of the loss in the sense that it is the nearest cause in point of time or place. If the peril insured against be the efficient, predominating cause of the loss, it is regarded as the proximate cause thereof, although the result was brought about by a train of events set in motion by the particular peril and operating with reasonable certainty to occasion the loss.

\* \* \* \* \* \* \*

"The peril against which the insured here had bought protection was that of a blow from a moving vehicle on a public highway. He could not, of course, have been struck except by a vehicle in motion. No part of the automobile hit his eye. The automobile hit

the rock and cast it into his eye. A blow from the automobile was the efficient and proximate cause of his injury. It seems immaterial that the moving car struck him with a rock instead of with some part of the machine. He was none the less struck, and the agency which inflicted the blow was a moving vehicle upon a public highway, against blows from which he had contracted for indemnity.'' Maness v. L. & C. Ins. Co. of Tenn., 161 Tenn. 41, 43, 45, 28 S.W.(2d) 339.

Likewise, in the instant case, while the damage to plaintiff did not occur as the result of any defect or failure in the operation of the hoisting machine covered by the endorsement, it did arise out of the maintenance or use of that hoist for raising the ambulance which was damaged, and such damage occurred while the ambulance in question was actually on the hoist. The use of the hoist might even, in one sense, be said to have been a part, at least, of the cause of the damages incurred, because, if the ambulance had not been up on the hoist, it might, like other vehicles in plaintiff's garage, have been rolled to safety. In any event, we think the absence of causal connection is immaterial, and this Court has expressly so held in the case of Ludlow v. Life & Casualty Insurance Co. of Tennessee, 31 Tenn.App. 508, 217 S.W. (2d) 361, 362, 13 A.L.R.(2d) 480. In that case, Mrs. Louise L. Ludlow was the beneficiary under a policy issued to her deceased husband, Frank Ludlow, by the defendant insurance company. Deceased was accidentally killed in an automobile wreck while the policy was in force, but deceased was not driving and was in no way responsible for the accident which caused his death, although he had been drinking and was at the time intoxicated. Liability was denied by the insurance company

on the ground that the policy contained a provision, "This policy does not cover * * * loss or injury sustained by the insured while he has physically present in his body intoxicating liquors or narcotics in any degree." The lower court allowed a recovery on the ground that, although the insured did have alcohol or intoxicating liquors in his body at the time of the accident which caused his death, the presence of that alcohol physically in his body had no causal connection whatever with the occurrence of the accident or with his resulting death. The Court of Appeals reversed, holding that the presence or absence of causal connection was immaterial, and the Supreme Court denied certiorari. From the opinion of the Court of Appeals, written by Baptist, J., we quote as follows:

"By no stretch of language can we read into this policy a requirement or condition that a causal connection must be shown where the insured has placed himself within the exception in question.

*    *    *    *    *    *

"We are of the opinion that the Chancellor was in error in holding that it was necessary for the insurer to show causal connection between the insured's drinking intoxicants and his injury. Therefore, the defendant's assignment of error on this question is sustained." Ludlow v. Life & Casualty Ins. Co., 31 Tenn. App. 518-519, 217 S.W.(2d) 365.

In the Ludlow case, the holding that the absence of causal connection was immaterial resulted in a judgment in favor of the insurance company, whereas, in the instant case, our holding that the absence of causal connection is immaterial will result in a judgment in favor of the

insured We think, however, that the principle is the same, and equally applicable, regardless of the result reached.

For the reasons stated, the judgment of the Circuit Court will be reversed and judgment entered in this Court in favor of the plaintiff, O. T. Hattley, d/b/a Hattley's Auto Service, and against the defendant Lumberman's Mutual Casualty Company, for the sum of $1798.94, together with interest there on from September 26, 1962, the date on which the suit in this cause was filed, and all of the costs of the cause.

Carney, J., and R. H. Spragins, Special Judge, concur.