OPINION OF THE COURT
Richard F. Kuhnen, J.
This is a motion for summary judgment in an action for a declaratory judgment to fix the rights of the parties under policies of insurance issued by plaintiff Allstate and defendant Nationwide as they relate to a personal injury action now pending between Crockett Hoyt as plaintiff and Frank Neice as defendant.
The facts are evidently in some dispute, but for the purposes of this motion the following would seem to be a fairly accurate picture of what transpired.
On November 5, 1977 Frank Neice was driving a Rambler sedan towing a camper trailer on a steep road in Greene County, headed for a small airport operated by his nephew, defendant Robert Maben. When his wheels started to spin on the wet pavement, he unhitched the trailer and maneuvered it to the opposite side of the road, pointing downhill. His wife, in the meantime, drove off with the Rambler, returned, and parked it 50 or 60 feet ahead of the trailer on the downhill side. His niece, Nancy Maben, then appeared, offered to help and came back with her father’s jeep, a GMC Jimmy, and positioned the jeep close to the tongue of the trailer. Hoyt and Barber, who evidently were in the company of Nancy Maben, took part in assisting. With Neice and Barber on opposite sides of the tongue, Hoyt picked it up to attach it to the jeep, or Neice started to elevate it, when it came forward, crushing Hoyt’s hand between the tongue and some part of the jeep.
Allstate insures the Rambler and trailer, Nationwide the GMC Jimmy.
The action by Hoyt in Greene County against Neice claims that the accident was due entirely to the negligence of Neice in operating the trailer so as to permit it to roll uncontrolled.
Neice is the named insured in the Allstate policy, Maben in the Nationwide. Concededly, the respective policies also include Mrs. Neice and Nancy Maben as "entitled to protection” by reason of their use with permission of the policyholder.
*597 Allstate is presently defending Neice in the negligence action on the theory that Neice may have been "using” his vehicle, which included the trailer, within the terms of the policy, even though the trailer was detached at the time of the accident.
Allstate, however, takes the position that Neice was also "using” the Maben jeep within the meaning of the Nationwide policy and is entitled therefore to protection under it as an additional insured. It also says that the Nationwide policy is either "primary” in the sense that the insurance provided by that policy must be exhausted before calling upon Allstate, or that the two share equally, or pro rata in accordance with the respective limits of liability and it requests the court to rule also on this question.
The position of Nationwide is that Neice acquired no coverage under its policy because, prior to the actual attachment of the trailer to the Maben jeep, which was never consummated, he was not "using” the trailer within the coverage provisions of its policy which state: "[liability] shall also apply to any trailer designed for use with a private passenger automobile, if not being used with a different type automobile for business purposes, while such trailer is owned, hired or borrowed by, or furnished for regular use to, any person entitled to protection, and used by the Policyholder or his spouse residing in the same household, or with the permission of either.”
Neice was not a "person entitled to protection”, it is argued, until the trailer became attached to the Nationwide insured Maben jeep; that he did not become "legally responsible” for the "use” of the Maben jeep until that time and therefore did not qualify under Coverage C(2) which extends protection to "any person or organization legally responsible for the use of the described automobile, provided the actual use was with the permission of the Policyholder or his spouse.”
Nationwide also argues that Neice was covered by his Allstate policy under the standard "unloading and loading” provisions from the time he "unloaded” the trailer until such time as he "loaded” it, that is, attached it to another motor vehicle as intended.
Counsel for Nationwide makes the statement in one of its memoranda that, "The plaintiffs in this action contend that the Allstate coverage ceased upon the arrival of Nancy Maben and the CMC Jimmy which was insured by the Nationwide Century Automobile Policy which was issued to Robert Ma *598 ben”. We do not understand that to be plaintiffs’ contention, but rather that plaintiffs’ position is that Neice is also entitled to coverage under the Nationwide policy, either primarily, equally or on a pro rata basis.
It is the opinion of the court that the Allstate policy covers Neice whether one applies the "unloading and loading doctrine” or not, even though there is a serious question in the court’s mind that that doctrine was ever intended to apply to other than goods, merchandise or, as in one case cited, an incapacitated passenger. (Broome County Co-op. Fire Ins. Co. v Aetna Life & Cas. Co., 75 Misc 2d 587.) Neice’s coverage stems, in any event, from the fact that under the Allstate policy terms he was the "owner” of an "owned automobile” which by definition includes a "trailer” and that the injury complained of was allegedly one "arising out of the ownership, maintenance or use, including loading and unloading, of the owned automobile or a non-owned automobile”.
There is no requirement in the policy or otherwise that the trailer must be physically attached to the private passenger automobile at the time of the injury for coverage to apply or continue. (Cf. Quality Dairy Co. v Fort Dearborn Cas. Underwriters, 16 SW2d 613 [Mo], where the accident occurred when a wagon, towed by an automobile, became disengaged and collided with another automobile.)
The more important question therefore is whether Neice is entitled also to the protection of the Nationwide policy and to what extent. This question depends upon whether he can be said to have been "using” the Maben vehicle at the time of the injury.
Nationwide stresses that the trailer tongue had not yet engaged the Maben jeep. The court does not consider this fact as controlling. Neice had accepted the assistance of the jeep, which had, as part of the attachment process, been maneuvered into position and the tongue of the trailer had been elevated, either by Hoyt or by Neice, for the purpose of engaging it with the jeep. Viewing the picture as a whole, it is our opinion that the Maben vehicle, situated as it was, for a definite purpose, was clearly being "used” by Neice as a part of the engagement process.
As the court wrote in the Quality Dairy case (supra, p 615) liability for "use” is not excused by reason of the disengagement of the wagon, where "it was nevertheless the use * * * of the truck as a propelling power which put the wagon in *599 motion and started the chain of circumstances which proximately led to the injury sustained.” Although in the instant situation the jeep was motionless at the moment of injury, it had been positioned in Neice’s interest and after consultation with him, and this "started the chain of circumstances which proximately led to the injury sustained”.
If the "unloading and loading doctrine” is in fact applicable, then Neice should be considered as making permitted use of the Maben vehicle as a step in that process, although no actual attachment had yet been made and a change in plan had been made between unloading and loading. (Cf. Wagman v American Fid. & Cas. Co., 304 NY 490, where an insured truck was held to have been "used” within the policy terms by a person unrelated to the owner or driver, who took no part in the actual loading, but while supervising the pickup at the curb, bumped into and injured a pedestrian. The court stressed the broad and liberal interpretation of the terms "use” and "unloading and loading” as encompassing the "complete operation”; see, also, Hertz Corp. v Beilin, 28 AD2d 1101, affd 22 NY2d 736.)
It remains then to determine the respective apportionment of responsibilities between Allstate and Nationwide as to Neice.
The Allstate policy provides:

"If there is other insurance

"Allstate shall not be liable under this Section I for a greater proportion of any loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all collectible insurance against such loss”.
It provides further:
"Other Insurance. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under this coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.
"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to *600 exceed the higher of the applicable limits of liability of this insurance and such other insurance, and Allstate shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance.”
The Nationwide policy is essentially the same.
It thus follows, since the court has concluded that Neice is entitled to coverage under both policies by virtue of the fact that he was making "use” of both his insured trailer and also of the insured Maben jeep, that each carrier is primarily liable with respect to the vehicle described in its policy; that protection should be afforded to Hoyt in proportion to the maximum coverage afforded by each of the policies. (Industrial Ind. Co. v Continental Cas. Co., 375 F2d 183; Ruan Transp. Corp. v Truck Rentals, 278 F Supp 693.)