[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MARCH 10, 1997
The genesis of this declaratory judgment action is a personal injury law suit by Paul Marro and Lisa Marro arising out of an incident alleged to have occurred on March 22, 1992. In that CT Page 2243 action, Paul Marro, et al v. American Medical Response ofConnecticut, Inc., et al., No. CV 94-0358787, the plaintiff's claim that the defendant's employees were transporting Paul Marro from his apartment to its ambulance on a stretcher, when they dropped him, causing injuries.
American Medical Response, the named plaintiff in this case, is the present owner of what was formerly New Haven Ambulance Service, Inc., which was the entity providing emergency service to Paul Marro. At the time, New Haven Ambulance was insured under a commercial liability policy issued by Western World Insurance Company, which is also a plaintiff in this case. New Haven Ambulance was also insured under two other policies. One was a business automobile policy issued by the defendant New Hampshire Insurance Company, and the other was a comprehensive general liability policy issued by Transamerica Insurance Company. The present action was initiated by Western World to determine New Hampshire and Transamerica's obligation to provide coverage for American Medical Response in the Marro litigation. A declaratory judgment action is an appropriate procedural vehicle for resolving issues of insurance coverage. See, Safeco Insurance v.Vetre, 174 Conn. 329 (1978).
The plaintiff's have now moved for summary judgment. They contend that based on the undisputed facts, they are entitled as a matter of law to a judgment declaring that the New Hampshire policy provides primary coverage in the Marro litigation. In the alternative, they contend that the Transamerica policy should provide primary coverage if the Marro claim is deemed to be not one arising out of the use of a covered auto or out of the rendering or failure to render emergency services. As a third alternative, they claim that Western World and Transamerica should share responsibility for American Medical Response's coverage on a pro rata basis.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Book § 384; Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994); Telesco v. Telesco, 187 Conn. 715,447 A.2d 752 (1982); Yanow v. Teal Industries, Inc., 178 Conn. 262,422 A.2d 311 (1979). A "material" fact is one which will make a difference in the outcome of the case. Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). In CT Page 2244 ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431,362 A.2d 857 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 273 A.2d 716 (1970);Dorazio v. M.B. Foster Electronic Co., 157 Conn. 226, 253 A.2d 22
(1968). "In deciding a motion for summary judgment. the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1980).
Once the moving party has submitted evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11-12;Farrell v. Farrell, 182 Conn. 34, 38 (1980); RuscoIndustries, lnc. v. Hartford Housing Authority, 168 Conn. 1, 5
(1975). It is not enough for the opposing party merely to assert the existence of such a disputed issue. "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380." Bartha v.Waterbury House Wrecking Co., supra, 190 Conn. at 12. "The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." Kasowitzv. Mutual Construction Co., 154 Conn. 607, 613 (1967), quotingBoyce v. Merchants Fire Ins. Co., 204 F. Sup. 311, 314 (D. Conn. 1962); Burns v. Hartford Hospital, 192 Conn. 451, 455 (1984).
The party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denial but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256,106 S.Ct 2505, 2514, 91 L.Ed.2d 202, 217 (1986), cited in Salomon v.Krusiewicz, 14 CLT 456 p. 31, 3 CSCR 84a (Super.Ct., New Britain, 10/6/88).
Several provisions of each of the three policies in question are critical to the resolution of this matter, which requires several levels of analysis. The manufacturer's and contractor's liability insurance portion of the Western World policy excludes CT Page 2245 coverage for "bodily injury and property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile . . . owned or operated by or rented or loaned to an insured, or (2) any other automobile . . . operated by any person in the course of his employment by any insured." The emergency care services/malpractice portion of this policy excludes "any liability of the insured which would be covered by a standard automobile public liability policy." It also provides that Western World's liability for injury "arising out of the rendering or failure to render . . . professional services by one of the insured's personnel" is excess over "any other valid and collectible insurance . . ."
The New Hampshire policy is a business automobile policy that includes standard automobile liability coverage. As such, it provides coverage for injuries "caused by an accident and resulting from the ownership, maintenance or use of a covered auto."
The Transamerica policy contains an exclusion for injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . auto . . . owned or operated by or rented or loaned to any insured." Under this policy, use includes "loading and unloading," but that phrase is defined as relating to "the handling of property." This policy states that its commercial general liability coverage is primary, except when the loss arises out of the use of the automobile that is not subject to the general exclusion for injury arising out the use of an auto. The Transamerica policy also specifically excludes coverage for "bodily injury . . . due to the rendering or failure to render any professional service."
Thus, if Marro's injuries arose out of the "use" of the American Medical Response ambulance, the New Hampshire policy provides coverage, and the Western World and Transamerica policies do not. If the injury resulted from the rendering or failure to render professional services, the Western World policy provides coverage, but only as excess over any other collectible insurance. The New Hampshire policy makes no reference to such coverage, and the Transamerica policy excludes it. If the injury arose out of neither the use of an automobile nor out of the rendering or failure to render professional services, then Western World and Transamerica would share coverage on a pro rata basis, based on the general business liability portions of their policies. CT Page 2246
Central to the plaintiffs' claim is their contention that the Marro incident arose out of the "use" of an automobile, the ambulance. The undisputed facts, however, establish that the emergency service personnel dropped the stretcher on which they were carrying Marro while they were still inside his apartment.
To "use" a motor vehicle means "to put [it] into action or service: to have recourse to or enjoyment of: employ." Aetna Lifeand Casualty Co. v. Bulaong, 218 Conn. 51 (1991), citing Webster's Third International Dictionary. There must be some causal connection between the "use" and the injury in order to conclude that the injury resulted from the use. Hogle v. Hogle,167 Conn. 572, 577 (1975). With those definitions and requirements in mind, the Marro incident is too attenuated as to both time and space to permit the court to conclude as a matter of law that it arose from the use of an automobile. The negligence, if that is what it was, that caused Marro's injury was too far removed from the use of the vehicle, which, as has been said, had come to a complete stop, and its personnel were inside the Marro apartment when they dropped the stretcher on which they were carrying him. The mere fact that the plaintiff's employees would not have dropped Marro unless they had first used the ambulance to get to his apartment does not make the accident one that resulted from the use of the vehicle.
To justify their claim of "use," therefore, the plaintiff's must argue that ambulance personnel were in the process of "loading" the vehicle at the time of the injury. The Transamerica policy defines "loading and unloading" in terms of property, so this argument applies only to the New Hampshire policy, which does not include such a qualifier. New Hampshire contends that, given the undisputed facts that Marro and the emergency service personnel were very much inside the Marro apartment at the time of the injury, while the ambulance itself was parked very much outside the apartment, parked on the street, the emergency service personnel can hardly be said to have been "loading" the vehicle at the time of the mishap. New Hampshire thus argues that although the plaintiff's personnel may have been planning to load Marro into the ambulance, they cannot be said conclusively to have been loading him at the time of the accident, and the incident can not be said to have arisen out of the vehicle's use based on a "loading" theory.
Most cases that have considered liability attendant to CT Page 2247 loading and unloading of vehicles have done so in the context of property, not persons. See, generally, annot., "Risks Within `Loading and Unloading' Clause of Motor Vehicle Liability Insurance Policy," 6 A.L.R.4th 686. See, also, annot., "Liability of Operator of Ambulance Service for Personal Injuries to Person Being Transported," 68 A.L.R.4th 14, 88, which considers the question of liability for negligence during such activities, but not in the context of insurance policies providing or excluding coverage for incidents arising out of loading or unloading. One case that has held that the concept of "loading and unloading" in the insurance context does apply to people is Broome CountyCooperative Fire Insurance Co. v. Aetna Life and Casualty Co. etal., 347 N.Y.S.2d 778, 75 Misc.2d 587 (1973). Noting that no previous New York case that applied the concept of loading or unloading to persons had been brought to its attention, the Broome County court concluded that this was a fortuity, noting that the "obvious explanation is that the problem has thus far arisen only in a commercial context." Citing Elliot v. Firemen'sInsurance Co. 111 Ga. App. 49, 140 S.E.2d 524, and J.T. Hinton Son v. Employers Liability Assur. Co., 166 Tenn. 324,62 S.W.2d 47 (1933), as cases in which other state courts had "no difficulty in finding that a person can be `unloaded' from an automobile, the court went on to apply the "completed operation" doctrine[1] to the facts of that case. It held that ambulance personnel who carried a plaintiff into her home and dropped her just before placing her in a chair had not yet completed the operation they had begun when they first began to remove her from the ambulance. They were therefore still engaged in "unloading" at the time of the accident. The "completed operation" doctrine means that the term "loading or unloading" embraces "not only the immediate transference of the goods to or from the vehicle, but the .complete operation' of transporting the goods between the vehicle and the place to or from which they are being delivered." (Citation omitted.) Broome County, supra, 347 N.Y.S.2d at 782.
Although the facts of Broome County and the instant matter are similar, there are several important distinctions. First, this case involves an alleged loading of the ambulance, whereasBroome County involved an unloading. Second, in Niece et al. v.Nationwide Mutual Insurance Co. et al., 419 N.Y.S. 799, 801100 Misc.2d 595 (1978), the very same judge who decided Broome County
expressed some reservations about the extension of the doctrine beyond goods and merchandise. Finally and most significantly, theHinton case, on which Broome County relied, in fact held that the injuries sustained by a person while being carried on a stretcher CT Page 2248 did not arise out of the "loading" of the ambulance because the accident, which happened on a muddy terrace just outside the plaintiff's home, occurred too far away from the ambulance. The court concluded:
 The transportation from bed to curb was preparatory to the use of the ambulance, but until the ambulance was reached, its use in the transportation of the patient had not begun. The hazard of the transportation of persons to the ambulance was not within the terms of the contract and was not assumed by the insurer.
Hinton, supra, 62 S.W.2d at 49.
This statement appears to this court to be a sound approach to determining when the "use" of the vehicle began with respect to the incident that caused Marro's injuries. Obviously, the incident in this case, which occurred while still inside the Marro apartment, was even more remote from the use of the vehicle than was that in Hinton.
The Transamerica policy makes explicit its understanding that the concept of loading and unloading only involves goods and merchandise. Although the failure of the New Hampshire to provide such a distinction might suggest to some that passengers are included within the concept, it is more reasonable to conclude that the Transamerica policy only made explicit what was unspoken in the New Hampshire policy and what was implicit in even theBroome County decision: that "loading and unloading" is a concept that generally applies to goods and merchandise, and not to people. Even if under certain limited circumstances the concept may be said to include people, that extension is not applicable in this case where the act of alleged negligence was physically and temporally so far removed from the vehicle and its use.
The Emergency Care Services/Malpractice portion of the Western World policy excludes coverage for "liability which would be covered by a standard automobile public liability policy." The New Hampshire policy is such a policy, covering accidents arising out of the "ownership, maintenance or use of a covered auto," and the vehicle in which Marro was to have been transported was indisputably a "covered auto." Because, however, the undisputed facts do not establish that the Marro incident arose out of the "use" of the ambulance, even if "use" is defined as including CT Page 2249 "loading or unloading" and even if "loading and unloading" is determined under these circumstances to embrace passengers,[2]
the plaintiff's are not entitled to summary judgment holding that either New Hampshire or Transamerica is obligated to provide insurance in this case pursuant to its automobile liability coverage.
The Transamerica policy also excludes coverage for bodily injury resulting from "the rendering or failure to render any professional service." The Western World policy does, however, cover "liability arising out of the rendering, or failure to render . . . professional services by one of the insured's personnel," although such coverage is specifically excess over "any other collectible insurance." The court must therefore now consider whether the undisputed facts demonstrate that Marro's injuries did not arise out of the rendering or failure to render professional services.
The plaintiff's contend that the transportation of Marro from his bed to the ambulance was not a professional service within the meaning of its policy. Recognizing that there is no Connecticut case law on this subject, they point to cases a quarter-century old or older that conclude that such transportation is not a professional service. In Gulf InsuranceCo. v. Gold Cross Ambulance Service Co., 327 F. Sup. 147, 152
(1971), for example, the court noted:
 Ambulance "service" generally is not professional in nature. In cases where ambulance attendants administer oxygen or administer hypodermics the acts may be professional service although the attendants may not be professional men. The word "service" connotes work. Not all work is professional. "Professional service" traditionally, and as generally understood, means work requiring knowledge of an advanced type in a field of learning or science customarily acquired by a prolonged course of study of specialized intellectual instruction as distinguished from training in the performance of routine, manual, or physical processes. Id. at 152.
 Ambulance service is primarily manual. It is generally regarded as such. While it may require skill on the part of those who render the service, it does not require knowledge of an advanced type in a field of CT Page 2250 learning customarily acquired after a long period of specialized intellectual instruction. Id. at 154.
If Gulf and those even older cases which it cites were correctly decided at the time of their rendition, their vitality is undermined by significant changes that have occurred in the emergency medical services field over the past twenty-five years, including pervasive state regulation and licensing requirements for emergency service providers, including ambulance services, and training and certification procedures for their personnel. See, e.g., General Statutes Sec. 19a-175, Sec. 19a-179, and Sec.19a-180; Connecticut Regulations Sec. 19a-179-10, 19a-179-16, 19a-179-17 and 20-381-10. The court is unable to conclude from the documents in support of and opposition to summary judgment that American Medical Response personnel were in fact providing professional services at the time that Marro was dropped from his stretcher, but it has not been called upon to do so by this motion. Rather, and this is what is significant for purposes of this motion, the court is also unable to conclude that it is undisputed that they were not providing such services.
The plaintiff's are therefore not entitled to summary judgment declaring that Western World is relieved of the obligation to provide coverage based on its contention that Marro's injuries were not the result of a rendering or failure to render professional services. (Nor can it be said to be undisputed that the facts support the conclusion that Transamerica is relieved of any obligation to provide coverage based on its exclusion of professional services related injuries or that Western World's coverage for such injuries is excess over Transamerica's coverage.) All that can be stated with certainty is that, based on those undisputed facts that have been submitted to the court in connection with this motion, the plaintiff's have not shown that either of the defendants is obligated, as a matter of law, to provide any of the insurance coverage that Western World seeks to shed, or, at least, to share. The motion for summary judgment is therefore denied.
Silbert, J.