KANGAS v AETNA CASUALTY & SURETY COMPANY

1. INSURANCE—ACTIONS AGAINST INSURED—DUTY TO DEFEND.

The obligation of a liability insurance company to defend an action brought against its insured by a third party is to be determined by the allegations of the complaint in the third-party action; however, the duty to defend includes the case where the insurer knows of a true but unpleaded fact or set of facts that would bring the claim within the coverage of the policy.

2. INSURANCE—POLICY EXCEPTIONS—INTENTIONAL ACTS—ASSAULT AND BATTERY.

A jury finding in a suit for assault and battery that a party aided and abetted in an intentional act of assault and battery is a defense to the party's suit against his insurer for failure to defend against the claim, where the policy excluded liability for intentionally inflicted injuries.

3. INSURANCE—AUTOMOBILES—INJURY—CAUSAL CONNECTION—OWNERSHIP, MAINTENANCE, USE.

There must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile to create a claim under the terms of an automobile insurance policy which provides coverage for injuries arising out of the ownership, maintenance or use of an automobile; the causal

REFERENCES FOR POINTS IN HEADNOTES

[1] 44 Am Jur 2d, Insurance §§ 1579–1583.

Validity, construction, and effect of statutory or policy provisions which give injured or damaged person right of action against insurer in respect of indemnity or liability insurance voluntarily carried. 106 ALR 516.

[2] 44 Am Jur 2d, Insurance §§ 1247–1259.

Accident insurance: death or injury intentionally inflicted by another as due to accident or accidental means. 116 ALR 396.

Injury to or death of insured while assaulting another as due to accident or accidental means. 26 ALR2d 399.

[3] 7 Am Jur 2d, Automobile Insurance § 13.

[4] 7 Am Jur 2d, Automobile Insurance § 84.

Liability insurance: assault as an "accident," or injuries from it as "accidental," within coverage clause. 33 ALR2d 1027.

connection must be more than incidental, fortuitous or "but for," and the injury must be forseeably identifiable with the normal use, maintenance and ownership of the vehicle.

4. INSURANCE—AUTOMOBILES—ASSAULT AND BATTERY—OWNERSHIP, MAINTENANCE, USE.

An assault and battery is not a normal, foreseeable occurrence in the use of a vehicle; and an altercation between automobile passengers and a pedestrian, while the car was parked and the tortfeasors were out of the car, did not arise out of the ownership, use and operation of the automobile under the terms of an insurance policy.

Appeal from Ontonagon, Donald L. Munro, J. Submitted May 16, 1975, at Marquette. (Docket No. 21447.) Decided August 27, 1975. Leave to appeal denied, 395 Mich 787.

Complaint by Donald L. Kangas and William Sharkey against Aetna Casualty & Surety Company for failure to defend the plaintiffs in a prior suit for assault and battery. Summary judgment for defendant. Plaintiffs appeal. Affirmed.

*Wisti & Jaaskelainen* (by *James F. Tercha),* for plaintiffs.

*Strom, Butch, Quinn & Rosemurgy* (by *Terrill S. Jardis),* for defendant.

Before: D. E. HOLBROOK, P. J., and ALLEN and D. E. HOLBROOK, JR., JJ.

ALLEN, J. This is a case of first impression arising out of defendant's refusal to defend the plaintiffs in a prior civil assault and battery action. Plaintiffs, against whom the jury in the prior action had reported a verdict of $12,500, filed suit February 6, 1974. Defendant countered with a motion for summary judgment. Following a hearing the trial judge rendered an opinion granting the motion and an appropriate order was entered

August 14, 1974. Plaintiffs appeal the granting of the motion as of right.

At approximately 10:30 a.m., June 17, 1971, William Byrnes, a minor, was walking on highway M-107 in Ontonagon County at a point approximately 6/10 of a mile from the junction of highway M-107. A vehicle owned and driven by plaintiff Kangas and occupied by plaintiff Sharkey with Ronald E. Giddis and John G. Giddis, pulled over on the right shoulder of the highway opposite from the point where Byrnes was walking. Some or all of the occupants of the vehicle exited the car and proceeded to assault and batter Byrnes who ran out into the highway where he was struck by a truck driven by one Henry J. Bode. Subsequently, a civil action was brought on behalf of Byrnes against the four occupants of the Kangas vehicle and against Bode, the driver of the truck. The complaint in that lawsuit alleged that the Giddises, William Sharkey and Donald Kangas:

"got out of the car at or near the junction of highways M-107 and M-64 and beat up the minor plaintiff, causing or contributing to the injuries hereintofore set forth in said complaint; said assault and battery was intentionally and negligently administered and most severe".

The jury returned a verdict against the Giddises for assault and battery and against Donald Kangas and William Sharkey for aiding and/or abetting the Giddises in an assault and battery.

At the time of the accident, plaintiff Kangas was insured with the defendant under the terms of a family automobile policy. Kangas demanded that defendant defend him in the prior suit. Defendant Aetna refused to defend either Kangas or Sharkey.

Two sections of the family automobile policy

issued to Kangas are relevant to this appeal. Liability coverage is defined as follows:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
"A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called *'bodily injury'* sustained by any person;

*      *      *

*arising out of the ownership, maintenance or use of the owned automobile* or any non-owned automobile, and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; * * * ." (Emphasis supplied.)

Under exclusions, the policy reads as follows:

"This policy does not apply under the Liability Coverage:

*      *      *

"(b) to bodily injury or property damage caused intentionally by or at the direction of the Insured."

In inverse order to their appearance in the policy, we examine whether the above provisions justify the trial court's grant of summary judgment in favor of defendant. Before doing so it will be helpful to state the general rules governing our analysis.

The obligation of a liability insurance company to defend an action brought against its insured by a third party is to be determined by the allegations of the complaint in such third party action. 50 ALR2d 458, § 4, pp 465–466, *Guerdon Indus-*

*tries, Inc v Fidelity & Casualty Co,* 371 Mich 12, 18; 123 NW2d 143 (1963), *Aetna Casualty & Surety Co v State Farm Mutual Automobile Insurance Co,* 16 Mich App 658, 659; 168 NW2d 465 (1969). In some jurisdictions, including Michigan, this obligation has been extended to include the duty to defend if the insurer knows that a true but unpleaded fact or set of facts would bring the claim within the coverage of the policy. Judge DeMascio, in *Transport Insurance Co v Michigan Mutual Liability Insurance Co,* 340 F Supp 670, 676 (ED Mich, 1972),[1] stated the rule as follows:

"But, this general rule is not without exception as defendant would have us believe.

" 'It is a general rule that the duty of the insurer to defend an action against an insured is to be determined from the allegations of the complaint, *Lee v Aetna Casualty & Surety Co,* 178 F2d 750 (CA 2, 1949); Anno, 51 ALR2d 461, *unless the insurer knows that the true, but unpleaded, factual basis for the claims brings them within the coverage of the policy.' Albuquerque Gravel Products Co v American Emp Ins Co,* 282 F2d 218, 220 (CA 10, 1960), (emphasis added)."

The distinction between the general rule and the more broadened rule becomes significant when one compares the third party complaint in the prior action (which alleged only that the present plaintiffs with the other occupants of the car "got out of the car * * * and beat up the minor plaintiff") with the first amended complaint in the present appeal (which states that Kangas sat in the car all during the incident and Sharkey stood near the

---

[1] Judge DeMascio's decision was appealed to the U.S. Court of Appeals which, in *Transport Insurance Co v Michigan Mutual Liability Insurance Co,* 496 F2d 265 (CA 6, 1974), accepted the rule as stated above but reversed in part because the facts were also known to the opposing insurance carrier.

car during the scuffle).[2] Under the broadened rule, plaintiffs contend that the exclusion clause does not constitute a defense because under the actual facts, as distinguished from the facts pled in the original complaint, the bodily injury of Byrnes was not "caused intentionally by or at the direction of the Insured". Similarly, plaintiffs argue that paragraphs 3, 4 and 5 of the amended complaint, noted below, contain facts showing that the assault and battery arose out of the use and operation of the vehicle. In rebuttal, the insurer notes that at the prior trial, the jury was given a special question reading:

"Did William Sharkey and Donald Kangas aid and/or abet Ronald Lee Giddis in an assault and battery on William Byrnes?"

to which the jury found in the affirmative. On this basis defendant argues the plaintiffs acted intentionally and the exclusion clause applies as a defense. Further, the insurer argues that even if one accepts the facts as pleaded in the amended bill of complaint as accurate, the use of the automobile was so incidental to the assault that the trial court was fully justified in finding that, as a matter of law, the third party's injuries did not

[2] Paragraphs 3, 4 and 5 of the amended complaint read as follows:

"3. That someone in the aforementioned car asked William Byrnes where he was going, to which he replied, 'I'm going down to Silver Sands,' and further that William Byrnes was asked if he wanted a ride.

"4. That William Byrnes walked over to the car as WILLIAM SHARKEY and Ronald Lee Giddis got out of the car and further that Ronald Lee Giddis struck William Byrnes, William Byrnes pushed Ronald Lee Giddis, and William Byrnes ran out into the highway where he was struck by a truck driven by Henry J. Bode.

"5. That DONALD KANGAS sat in the car all during this incident which occurred over a brief space of time and WILLIAM SHARKEY stood near the car during the incident."

arise out of the ownership, maintenance and use of the insured vehicle.

Although the trial court did not rely upon the exception clause in reaching its decision, this Court concludes the exception clause is a defense to plaintiff's claim. Once the jury in the prior suit responded affirmatively to the special question, it found that plaintiffs aided or abetted in an act of intention. Assault and battery is an intentional act. *Tinkler v Richter,* 295 Mich 396, 401–402; 295 NW 201 (1940). We reject plaintiffs' argument that the presence of the word "negligently" in the complaint in the prior action removes the cause of action from the exception clause which refers only to intentional as distinguished from negligently inflicted injuries. We know of no such thing as negligent assault. Prosser, Torts (4th ed), p 41; Restatement of Torts 2d, § 21. In *Young v Morrall,* 359 Mich 180, 187; 101 NW2d 358 (1960), our Supreme Court said:

"The stipulated facts of an accidental or negligent injury inflicted by the principal defendant, while she was the owner and operator of a tavern and while the policy of insurance was in effect, precludes the defense of assault and battery. *The question of intent and/or wilfulness is an element of assault and battery. Tinkler v Richter,* 295 Mich 396; 295 NW 201 (1940), *Cogswell v Kells,* 293 Mich 541; 292 NW 483 (1940). This element has been stipulated out of the case by garnishee defendant in stipulating that Mrs. Morrall was *not intentionally* pointing the gun at plaintiff's decedent." (Emphasis supplied.)

In *Kraus v Allstate Insurance Co,* 379 F2d 443 (CA 3, 1967), defendant insurance company refused to defend its assured in a suit brought by a pedestrian who was killed when the assured deliberately killed himself and his wife by dynamiting his

car. The insurance policy contained an exclusion clause, the wording of which was identical to the exclusion clause in the instant case. The court held that because the insured's action was clearly intentional, defendant insurer was relieved from defending because of the exclusion clause. However, we do not base our decision on the exclusion clause alone.

Let us assume, *arguendo,* that because Kangas sat in his car during the assault and was not directly a participant thereto, he does not come within the rule of *Kraus, supra,* and accordingly the exception clause does not constitute a defense. Let us further assume that the facts pled in the amended complaint in this appeal are true and were known by defendant-insurer. The issue then becomes whether, under the facts as pled, the assault upon the third party Byrnes arose out of the ownership, maintenance or use of the owned automobile as those terms are used in the policy in this case. We find no decision in Michigan directly construing the phrase "arising out of the ownership, maintenance or use of a vehicle", but case law on the subject from other jurisdictions is voluminous. 12 Couch, Insurance 2d, §§ 45:60–45:80, pp 149–163, contains an extensive analysis of the issue. Where the injury inflicted is by an assault by an insured on a third party or by a passenger in assured's vehicle, the great weight of authority is that the injury does not arise out of the ownership, maintenance or use of the automobile.

"When the insured, through irritation or anger, strikes and injures another person, it has been held that such injury does not arise from the use of the insured automobile." [Citing *National Mutual Casualty*

*Co v Clark,* 193 Miss 27; 7 So 2d 800 (1942).] 12 Couch, Insurance 2d, § 45:78, p 162.

"It has been held that an insurer under an indemnity policy by which it agreed to pay any sums for which the insured might become obligated because of injuries resulting from the ownership, operation, or maintenance of the insured's buses was not liable for an amount paid by the insured in settlement of a claim of a passenger assaulted by a fellow passenger." [Citing *Green Bus Lines, Inc v Ocean Accident & Guaranty Corp,* 257 App Div 851; 12 NYS2d 420, *aff'd* 282 NY 104; 25 NE2d 865 (1940).] 12 Couch, Insurance 2d, § 45:79, p 163.

Where the injury is the result of an assault or results from an action which has overtones of deliberateness, the courts have generally held that injury did not arise out of the ownership or use of the vehicle insured. This is true whether it is the assured himself who commits the act or whether it is passengers in his vehicle who inflict the injury. Several cases are illustrative. In *Speziale v Kohnke,* 194 So 2d 485 (La App, 1967), plaintiffs sued defendants for injury resulting from the throwing of fireworks by defendants from a moving vehicle. Summary judgment was granted in favor of Central Mutual Insurance Company and Government Employees Insurance Company, who had issued two automobile policies. The insuring companies claimed that the injuries did not arise out of the use of the insured automobiles. The court agreed, saying:

"As with the *Tucker* case, it is obvious that this case does not involve an 'arising out of the use of an automobile' as reasonably contemplated by that clause. That the circumstances here are not within the clause is accentuated by the fact that the act of throwing a firecracker was a voluntary, deliberate act on the part of the automobile passenger. This factor, along with the

entire set of circumstances, removes the connexity of the incident with the use of an automobile to the realm of insignificance." 194 So 2d at 487.

Conceding that the automobile was not the proximate cause of Byrnes' injuries, plaintiffs argue that only a "but for" cause is required. But for the automobile, plaintiffs and the Giddises would not have been at the scene of the accident. But for the automobile, Byrnes would not have been asked if he wished a ride. But for the invitation to a ride, Byrnes and passenger Giddis would not have argued with the resulting assault and battery on Byrnes. This remote type of causation was soundly rejected in *Richland Knox Mutual Insurance Co v Kallen,* 376 F2d 360 (CA 6, 1967). In that case, one Parris was driving his automobile when one Kallen, a passenger seated in the rear, attempted to throw a lighted firecracker out of the car window which was closed. The firecracker exploded within the car causing other firecrackers in the back seat to ignite and explode, resulting in personal injuries to the second passenger in the back seat. Parris carried an automobile insurance policy with American Policyholders Insurance Company. Kallen was insured under a homeowners policy issued by Richland Knox Mutual Insurance Company. Richland Knox brought a declaratory judgment action against both Kallen and American Policyholders Insurance Company, claiming that by reason of a special exclusion clause contained in the policy there was no coverage enuring to Kallen's benefit. The clause referred to was a provision that the policy did not apply to bodily injury in the ownership, maintenance, operation or use of an automobile. Judge Freeman of the district court held that coverage existed under the homeowners liability policy. Upon appeal, the court said:

"In rendering his opinion from the bench, Judge Freeman stated: * * * 'The fact that Kallen was riding in the vehicle was not, in and of itself, a cause of the accident. The cause of the accident was the lighting of the firecracker by Kallen, followed by his unsuccessful attempt to throw the firecracker out of the car window. The lighting and the throwing of the firecracker were not a causal result of Kallen's use of the car. His use of the vehicle had no necessary connection with the accident. Kallen's failure to throw the lighted firecracker away from the girl sitting next to him before it exploded was the cause of the injuries to the girl. The location of the parties in the car was purely incidental.

" 'Thus, this Court holds it cannot be said that the accident arose out of Kallen's use of an automobile within the meaning of the special exclusion in the policy.'

"It is concluded that the District Court properly disposed of this issue. As Judge Freeman astutely noted, 'certainly not every tortious act occurring inside a vehicle * * * the lighting of a firecracker inside a car does not involve the use of a car, any more than lighting a firecracker during business hours is a business pursuit.' " 376 F2d at 364–365.

A case similar to the instant case is *Government Employees Insurance Co v Melton,* 357 F Supp 416 (D SC, 1972). Seven passengers were riding in the rear of a truck returning from a school dance and driven by the son of the insured. On the way back, the truck stopped at a filling station. While the truck was stopped, some of the boys threw soft drink bottles out of the truck, striking two bystanders who brought suit. The insured had given permission to his son to drive the truck and was covered by a standard insurance policy issued by the Government Employees Insurance Company which covered bodily injuries "arising out of the ownership, maintenance or use of the owned automobile". Four of the boys pleaded guilty to assault.

The insurance company commenced a declaratory judgment action to have the court interpret the insurance coverage. The court held that the insurer was not responsible because there was insufficient causal relationship between the use of the vehicle and the accident in question.

"The vehicle in question was not used for the purpose for which it was designed, for there can be no realistic conclusion that it was designed for the purpose of allowing, permitting, or encouraging bottles, or other injurious matter to be thrown therefrom. *Insurance Co of North America v Royal Indemnity Co*, 429 F2d 1014, 1017 (CA 6, 1970). In the case before this court the causal relation between the use ·of the vehicle and the incident in question simply does not exist. *Plaxco v United States Fidelity & Guaranty Co*, 252 SC 437; 166 SE2d 799 (1969), *Kraus v Allstate Insurance Co*, 379 F2d 443 (CA 3, 1967), *General Insurance Co of America v Western Casualty & Surety Co*, 334 F2d 913 (CA 9, 1964)." 357 F Supp at 419.

The facts in the appeal before us and the case cited above are strikingly similar. In each, (a) the vehicle was parked when the accident occurred, (b) the driver did not directly participate in the tort, (c) the tort was committed by passengers, (d) some of the persons committing the tort either pled guilty or were found in a court action to have committed an assault.

In *St Paul Fire & Marine Insurance Co v Thomas*, 273 So 2d 117 (Fla, 1973), Terri Thomas sustained severe personal injuries when a Renault automobile in which she was riding as a passenger went out of control when it struck a pop bottle thrown out of the window by one Roig who was driving his father's car. Thomas obtained a judgment against Roig in a prior suit. Roig's father was covered under a standard homeowners policy

issued by St. Paul Fire & Marine Insurance Company which, as in the case on appeal before us, refused to defend Roig. The homeowners policy contained an exclusion clause that bodily injury sustained in the ownership, maintenance, operation or use of an automobile was not within the coverage of the policy. Thomas then brought suit against St. Paul Fire & Marine Insurance Company and obtained judgment. Upon appeal, the judgment was affirmed, the appellate court stating that even though the tortious act was committed in a moving vehicle it did not arise out of the use of the automobile.[3]

"The words 'arising out of' have been viewed as words of much broader significance than 'caused by', and have been said to mean 'originating from', 'having its origin in', 'growing out of' or 'flowing from', or in short, 'incident to' or 'having connection with' the use of the car. *Schmidt v Utilities Insurance Co,* 353 Mo 213; 182 SW2d 181 (1944), *National Indemnity Co v Corbo,* 248 So 2d 238 (Fla App, 1971). Even *if* we were to apply to this case the broader test of 'arising out of', we have the view that Roig's liability did not arise out of the use of the automobile. His location in the automobile at the time of the occurrence was fortuitous, merely the situs of his physical being at the time. His liability arose out of negligently throwing the bottle in the roadway. It would not have been altered or affected had he in a similar manner negligently thrown a bottle into the roadway while seated in a car parked on the shoulder of the road, or while standing outside of the car, or while standing on an overpass above the roadway." 273 So 2d at 120–121.

In *Mason v Celina Mutual Insurance Co,* 161 Colo

[3] The above case contains footnotes giving an excellent summary of cases holding an injury did not "arise out of" the use of an automobile as well as cases holding the injury or liability was one arising out of the use of a vehicle.

442; 423 P2d 24, 25 (1967), four high school students had driven to the high school to target practice with firearms. While the car was parked, one of the passengers was toying with a pistol when it accidentally discharged, killing another passenger. In holding that the injury did not arise out of the operation, maintenance or use of the vehicle, the court said:

"Here no causal connection between the discharge of the pistol and the stopped vehicle was shown, as is required to afford coverage under such a policy. See Anno, 89 ALR2d 150. Even though in a technical sense it might be argued that Donald was using the vehicle at the time the shot was fired, for he was sitting in it, such a use, however, is not the type of use contemplated by the policy in question where the injury would have to be one originating from the use of the vehicle as such. 7 Appleman, Insurance Law and Practice, § 4317, at 144. In Appleman at page 146 it is stated that: '1. The accident must have arisen out of the inherent nature of the automobile, as such' in order to bring one within the terms of such a policy." 423 P2d 24, 25.

In *National Union Fire Insurance Co of Pittsburgh v Bruecks,* 179 Neb 642; 139 NW2d 821 (1966), a firearm was discharged while the car was in motion. The injured passenger claimed coverage under two automobile policies but the court held there was no coverage, stating:

"The contracting parties plainly contemplated an accident immediately identifiable with the ownership, maintenance, or use of the vehicle. It does not appear to us, however, that the occurrence here will fit the plain, ordinary meaning of those categories within any reasonable interpretation of them." 179 Neb at 651; 139 NW2d at 827.

See also *Brenner v Aetna Insurance Co,* 8 Ariz

App 272; 445 P2d 474, 478 (1968), where a passenger in a moving vehicle was shot by another passenger in the vehicle who was fooling around with a pistol—the court concluding that even though the vehicle was in motion, was being used on a hunting trip and both parties were in the car, the incident did not arise out of the use or ownership of the vehicle.

In deference to appellant we concede that there are some opinions holding to the contrary.[4] The leading case is *Westchester Fire Insurance Co v Continental Insurance Co,* 126 NJ Super 29; 312 A2d 664 (1973), involving liability under both an automobile and homeowner insurance policy when a passenger threw a piece of wooden molding with a nail in it out of the rear window striking a bicyclist above the left eye. The court, noting that the act of throwing or dropping objects from moving vehicles is not such an uncommon phenomenon in our mobile society as to be unanticipated, held the automobile insurer liable. In effect, the court adopted a foreseeability test, stating that the negligent throwing of objects from a moving vehicle was a sufficiently foreseeable consequence of an automobile's use as to come within the terms of the policy. A similar result is found in *Home Indemnity Co v Lively,* 353 F Supp 1191 (WD Okla, 1972), where a passenger in insured's car negligently but not intentionally threw a pop bottle from a moving vehicle; *State Farm Mutual Automobile Insurance Co v Partridge,* 10 Cal 3d 94; 109 Cal Rptr 811; 514 P2d 123 (1973), where a gun was accidentally discharged as insured drove

---

[4] For example, it is difficult to distinguish the holding in *Westchester, Home Indemnity Co,* or *Wyoming Farm Bureau* with the holdings in *St Paul Fire & Marine Insurance Co,* or the holdings in *Partridge, supra,* with the decisions in *Bruecks* and *Brenner, supra. See also* footnote 3.

his vehicle off the paved portion of the roadway in pursuit of a running jackrabbit; *Wyoming Farm Bureau Mutual Insurance Co v State Farm Mutual Automobile Insurance Co* 467 F2d 990 (CA 10, 1972), where a passenger in insured's car negligently threw a vodka bottle out of a moving car; *Valdes v Smalley,* 303 So 2d 342 (Fla App, 1974), where defendant teenagers, after being engaged in an altercation with other teenage youths in a restaurant parking lot, arranged to meet at another location to settle the score, drove to the second location where another altercation ensued during which defendant driver deliberately drove at a high speed close to the other youths as his passenger intentionally threw a beer mug out of the window at the opposing group of boys.

Granting that the opinions cited as contrary above are in some respects inconsistent with the holding referred to earlier, they are distinguishable from the appeal now before us. In the instant case, the act causing the injuy occurred while the vehicle was parked and when the alleged tortfeasor was out of the car. In the decision cited as contrary, the tort occurred while the car was in motion and while the tortfeasor was in the vehicle. In the contrary opinions, *Smalley* excepted, the act causing the injury was one of negligence rather than an act of deliberateness. In *Smalley,* which by reason of the gang fight has similarities to the instant case, the automobile was actively used to deliberately drive to the scene of the fight and then was intentionally used to cause the injurious act. Further, the case is distinguishable because the court implied that had the altercation occurred outside of the vehicle, an opposite holding might have been reached.[5] Lastly, while the fore-

---

[5] "In our view, the tragic occurrence in this case might very well

seeability test may rationally lead to a conclusion that in the normal use of an automobile one may expect objects to be thrown from the window, it does not lend itself to a conclusion that intentional assaults may be anticipated. In summary, we conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle. We do not find such a causal connection in this case. The injury did not occur in the vehicle or while it was in motion. Assaults and fisticuffs are not normal foreseeable occurrences in the use of a vehicle. The fact that the automobile came upon the pedestrian was purely fortuitous and incidental. The use of the vehicle had no connection with the unexpected subsequent altercation between the passenger Giddises and the pedestrian. Viewing the incident in its entirety, we find that the injury did not arise out of the ownership, use and operation of the automobile as those terms are used within the policy.

Affirmed, costs to defendant.

have been different had the car been standing still, or had Spradley been standing outside of the vehicle; perhaps the defendants in this case would not be facing civil liability for a wrongful death had their car not been proceeding at 40 miles per hour." 303 So 2d at 344–345.