THORNTON v ALLSTATE INSURANCE COMPANY

Docket No. 67926. Submitted February 8, 1984, at Lansing.—Decided June 5, 1984. Leave to appeal applied for.

Plaintiff, Eddie Thornton, Jr., brought an action in the Genesee Circuit Court seeking a determination as to the liability of defendants, Allstate Insurance Company and Nelvia Miller, for the payment of no-fault automobile insurance benefits to the plaintiff. The Michigan Attorney General and Department of Social Services were added as intervening plaintiffs. Plaintiff sought the benefits after being paralyzed from the neck down when wounded during an armed robbery by a passenger of the taxicab he was operating. The trial court, Philip C. Elliott, J., ordered that Allstate should pay such benefits and entered a judgment to that effect. Allstate appeals. *Held:*

The intentional shooting of the plaintiff by his passenger fulfills the "arising out of" requirement of § 3105 of the no-fault act so as to impose responsibility for no-fault benefits or automobile insurance benefits on Allstate, the insurer of the taxicab, because the plaintiff's injuries would not have occurred had he not been driving the cab. Since there is a direct causal connection between the use of the motor vehicle and plaintiff's injuries, plaintiff's injuries are compensable under the no-fault act.

Affirmed.

1. Insurance — Automobiles — No-Fault Insurance.

The no-fault insurance act provides that under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle (MCL 500.3105[1]; MSA 24.13105[1]).

References for Points in Headnotes

[1-3] 7 Am Jur 2d, Automobile Insurance §§ 194, 197, 351 *et seq.*

What are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicle. 15 ALR4th 10.

What constitutes a "motor vehicle" covered under no-fault insurance. 60 ALR3d 651.

2. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — USE OF AN AUTOMOBILE.

> Three factors aid in the determination of whether an injury from an intentional assault arises out of the use of an automobile for purposes of no-fault insurance coverage: while the automobile need not be the proximate cause of the injury, there must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile; the causal connection must be more than incidental, fortuitous or but for; and the injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle (MCL 500.3105[1]; MSA 24.13105[1]).

3. INSURANCE — AUTOMOBILES — NO-FAULT INSURANCE — USE OF AN AUTOMOBILE — TAXICABS.

> The injuries which a taxicab driver receives as a result of being intentionally shot by a passenger during an armed robbery may be found to arise out of the use of the taxicab for the purpose of recovery of no-fault insurance benefits where it is determined that there is a direct causal connection between the use of the taxicab and the driver's injuries (MCL 500.3105[1]; MSA 24.13105[1]).

*René J. Ortlieb,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Janis Meija* and *Bernard Rosner,* Assistants Attorney General, for intervening plaintiffs.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin),* for defendant.

Before: CYNAR, P.J., and J. H. GILLIS and R. C. ANDERSON,* JJ.

PER CURIAM. Defendant Allstate Insurance Company appeals as of right from a judgment ordering defendant Allstate to pay no-fault automobile insurance benefits to plaintiff Eddie Thornton, Jr.

For purposes of this appeal, the parties have

---

* Circuit judge, sitting on the Court of Appeals by assignment.

adopted the statement of facts as set forth in the opinion of the trial court:

"At approximately 2:40 a.m. on the morning of December 2, 1978, Eddie Thornton, Jr. (hereinafter referred to as Thornton), age 44, was operating a taxicab in the City of Flint, Michigan. He received a call over his radio informing him that there was a fare at 324 Highland Court and he proceeded to that location. Thornton pulled his cab in front of the house and honked his horn. Robert James Phifer, age 20, entered the back seat of the cab and requested that Thornton take him to 3410 Marvin Street. As Thornton began to pull away from the curb, Phifer drew a .25 caliber automatic pistol and, without a warning or a demand for money, shot Thornton once in the right side of the neck. As a result of this wound, Thornton is completely paralyzed from the neck down.

"After the shooting, Phifer demanded Thornton's money. He was able to obtain approximately $15.00 in change. Immediately thereafter, by previous arrangement, and with the aid of an accomplice, David Lee Caradine, who waited in the house during the ambush, Phifer pulled Thornton from the cab and dragged him across the street between two houses. There, Phifer stripped Thornton of his coat and shirt and left him lying half naked in the snow. Thornton remained conscious throughout the entire ordeal.

"At the ensuing criminal prosecution of Phifer, Caradine testified that, after Phifer suggested calling the cab and after Phifer called the cab, but before the cab arrived, Phifer pulled out a gun and stated that he was going to shoot the cab driver. Caradine further testified that Phifer directed him to remain in the house until after he heard the gunshot, at which time he was to come outside.

"Robert James Phifer was convicted of armed robbery and assault with intent to commit great bodily harm less than murder and is currently serving a sentence of 50 to 75 years.

\* \* \*

"\* \* \* Thornton was licensed by the City of Flint to

operate a cab. At the time of the assault, Thornton was working under an arrangement with Nelvia Miller whereby he drove a cab at night, from approximately 7:00 p.m. to 8:00 a.m. * * * Although Thornton was required to serve all parts of the City of Flint, the great majority of his trips were within the area of the north end of Flint.

* * *

"The deposition of Thornton was taken at the Martha T. Berry Medical Facility in Mt. Clemens on September 9, 1982. Thornton testified to the facts set forth herein. He further testified that he had once before, a few years earlier, been robbed while operating a different cab. He further testified, based on his memory that Nelvia Miller had previously had a cab driver who had been shot and killed, although he did not remember the name of such gentleman or the time of the occurrence. He further testified that Phifer directly entered the back seat of the car; that he had the front windows rolled up and the front doors locked.

* * *

"As a result of the shooting, plaintiff is virtually paralyzed from the neck down and he will need medical care for the balance of his life.

"The Michigan Department of Social Services (MDSS) is the state agency responsible for administering the Medicaid program in the State of Michigan, MCL 400.105 *et seq.;* MSA 16.490(15) *et seq.* Plaintiff is medically indigent, in other words, he is too poor to pay for his medical care. Thus far MDSS has paid the sum of one hundred forty-three thousand three hundred ninety-two and 20/100 dollars ($143,392.20) for the injuries sustained by plaintiff at the hands of Robert James Phifer. MDSS is subrogated to plaintiff's right of recovery for medical assistance, MCL 400.106; MSA 16.490(16)."

The trial court held, as a matter of law, that plaintiff's injuries arose out of the use of the taxicab and that the use of the taxicab was the proximate cause of plaintiff's injuries. The court

concluded, therefore, that plaintiff was entitled to recover no-fault benefits from defendant Allstate and ordered payment of those benefits to plaintiff.

The issue on appeal is whether the intentional shooting of a taxicab driver by a passenger fulfills the "arising out of" requirement of MCL 500.3105(1); MSA 24.13105(1) so as to impose responsibility for no-fault benefits or automobile insurance benefits on the insurer of the taxicab.

Michigan's no-fault automobile insurance statute provides:

"(1) Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle * * *." MCL 500.3105(1); MSA 24.13105(1).

The test to decide whether an injury "arises out of" the use of an automobile is set forth in *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1; 235 NW2d 42 (1975), *lv den* 395 Mich 787 (1975). The *Kangas* Court identified three factors to look to in deciding whether an injury from an intentional assault arises out of the use of the automobile:

"In summary, we conclude that while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle." *Kangas, supra,* p 17.

Although in subsequent cases this Court has continued to struggle with the three operative terms in this test: "causal connection", "incidental or

fortuitous", and "foreseeable", in *Williams v Citizens Mutual Ins Co of America,* 94 Mich App 762, 764-765; 290 NW2d 76 (1980), this Court explained:

"We note that the term 'arising out of' does not necessitate a finding that the injury was directly and proximately caused by the use of the vehicle. On the other hand, it cannot be extended to something distinctly remote. Each case depends on its own facts. *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307, 313-314; 282 NW2d 301 (1979). As a general rule, the injury must be foreseeably identifiable with the normal use of the vehicle. *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526; 280 NW2d 583 (1979); *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1; 235 NW2d 42 (1975)."

In *Gajewski v Auto-Owners Ins Co,* 112 Mich App 59; 314 NW2d 799 (1981), this Court denied coverage to a plaintiff injured when, on turning the ignition key in his car, an explosive device attached to the car by persons unknown detonated and severely injured the plaintiff. In reversing, the Supreme Court adopted the position of Judge CYNAR's dissent, 414 Mich 968; 326 NW2d 825 (1982), which states:

"I agree with the trial court that there was a sufficient causal relationship between plaintiff's use of the vehicle and his injuries. This case is distinguishable from the cases in which benefits were denied because the plaintiff's presence in the vehicle at the time of the injury was a mere fortuity. See, *e.g., Detroit Automobile Inter-Ins Exchange v Higginbotham,* 95 Mich App 213; 290 NW2d 414 (1980) (the insured's husband forced her to the curb, trapped her in her car, and shot her several times with a revolver); *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1; 235 NW2d 42 (1975) (passengers of the insured's vehicle assaulted a pedestrian); *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526; 280 NW2d 583 (1979) (the insured was

shot by an assailant while she was sitting in her vehicle). In these cases, the injury could have resulted whether the plaintiff was using the vehicle or not. The vehicle was more than merely the site of the injury. Under the facts in this case, turning the ignition key must be identified with the normal manner of starting a vehicle. There was a direct causal relationship between the use of the motor vehicle and plaintiff's injuries."

In the instant case, plaintiff would not have been injured had he not been driving the taxicab dispatched on this particular call. The assailants planned to take whatever money was in the taxicab and rob its driver, regardless of who that driver was. The plaintiff's injuries would not have occurred had plaintiff not been driving the cab. Being dispatched to and picking up fares who are strangers must be identified with the normal operation of a taxicab. Since we find a direct causal connection between the use of the motor vehicle and plaintiff's injuries, plaintiff's injuries are compensable under the no-fault act.

Affirmed.