MICHIGAN NORTHERN RAILWAY COMPANY v AUTO-OWNERS
INSURANCE COMPANY

Docket No. 91147. Submitted October 20, 1987, at Lansing. Decided
May 1, 1989. Leave to appeal applied for.

On November 24, 1982, a train owned by Michigan Northern
Railway Company traveled north over the Leetsville Road
crossing in Kalkaska County. Later that day a Kalkaska
County Road Commission employee plowed Leetsville Road,
passing over the railroad crossing. After the road had been
plowed, the train, travelling south, derailed after passing
through the crossing into a pile of dirt on the tracks. Michigan
Northern and its insurance subrogee brought an action in the
Kalkaska Circuit Court against the road commission and its no-
fault insurer, Auto-Owners Insurance Company, for damages
sustained as a result of the derailment. The court, William A.
Porter, J., granted partial summary disposition for plaintiffs,
holding that there was no genuine issue of material fact with
regard to liability under the no-fault act. Defendants appealed
by leave granted.

The Court of Appeals *held:*

1. A train engine is not a vehicle excluded from coverage
under the property protection insurance provision of the no-
fault act.

2. Assuming that the dirt on the track was the cause of the
derailment and that the dirt was left there by the county road
commission's employee, the operation of the blade truck was
not the cause of the property damage. The damage was the end
result of the act of plowing the road. Thus, the injury did not
arise out of the ownership, maintenance or use of a motor
vehicle as a motor vehicle and the court erred in granting
partial summary disposition for plaintiffs.

Reversed.

REFERENCES

Am Jur 2d, Automobile Insurance §§ 194 *et seq.*, 366.

What constitutes "motor vehicle" covered under no fault insurance.
60 ALR3d 651.

Automobile liability insurance: what are accidents or injuries "aris-
ing out of ownership, maintenance, or use" of insured vehicle. 15
ALR4th 10.

1. INSURANCE — NO-FAULT — VEHICLES — TRAINS.

   A train engine is not a vehicle excluded from coverage under the property protection insurance provision of the no-fault act (MCL 500.3121[1], 500.3123[1]; MSA 24.1312[1], 24.13123[1]).

2. INSURANCE — AUTOMOBILES — PROPERTY DAMAGE — CAUSAL CONNECTION — OWNERSHIP, MAINTENANCE, USE.

   There must be a causal connection between the injury sustained and the ownership, maintenance or use of the motor vehicle to create a claim under the terms of an insurance policy which provides coverage for injuries arising out of the ownership, maintenance or use of a motor vehicle; the causal connection must be more than incidental, fortuitous or "but for," and the injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle.

*Foster, Meadows & Ballard, P.C.* (by *Richard A. Dietz*), for plaintiffs.

*Barney, Hofmann & Gano* (by *Charles H. Gano*), for defendants.

Before: MICHAEL J. KELLY, P.J., and DOCTOROFF and J. T. CORDEN,* JJ.

J. T. CORDEN, J. Defendants appeal by leave granted from an order granting partial summary disposition to plaintiffs. The trial court held that there was no genuine issue of material fact with regard to liability under the no-fault act.

On November 24, 1982, a train owned by Michigan Northern Railway Company traveled north from Cadillac to Petoskey. The train passed over the Leetsville Road crossing, in Kalkaska County, at approximately 9:30 A.M. without problem. Shortly thereafter, a Kalkaska County Road Commission employee plowed the southbound lane of Leetsville Road, passing over the railroad crossing.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The northbound lane of Leetsville Road was plowed at approximately 2:30 P.M.

On its return trip along the same track, the plaintiff's train, traveling at about twenty miles per hour, approached the Leetsville Road crossing at about 3:10 P.M. As the train drew near the crossing, the crew saw a pile of dirt on the tracks and attempted to stop the train by using the emergency brake. However, the engine proceeded through the crossing into the dirt, derailed, and turned over on its side. For the purposes of this appeal, we will assume the dirt caused the train to derail and that the dirt was left on the tracks by the snowplow.

Plaintiff and its insurer as subrogee sued the Kalkaska County Road Commission and its no-fault insurance carrier. In addition to the no-fault violation, plaintiff also alleged a violation of the Unfair Trade Practices Act, negligence, and trespass. Both plaintiffs and defendants moved for summary judgment. The circuit court ruled that plaintiffs were entitled to property protection benefits from defendants as a matter of law under § 3121 of the no-fault act. The parties then stipulated to and the court ordered the entry of a certification of a controlling question of law.

In determining whether plaintiff is entitled to recover no-fault property protection benefits we must look at the relevant statute. MCL 500.3121(1); MSA 24.13121(1) provides:

> (1) Under property protection insurance an insurer is liable to pay benefits for accidental damage to tangible property arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle subject to the provisions of this section and sections 3123, 3125 and 3127.

MCL 500.3123(1); MSA 24.13123(1) provides:

(1) Damage to the following kinds of property is excluded from property protection insurance benefits:

(a) Vehicles and their contents, including trailers, operated or designed for operation upon a public highway by power other than muscular power, unless the vehicle is parked in a manner as not to cause unreasonable risk of the damage which occurred.

Thus, we must decide (1) whether the train engine was a vehicle operated or designed for operation on a public highway, and thus excluded from coverage under § 3123, and (2) whether the damage to plaintiff's tangible property arose out of the ownership, operation, maintenance or use of defendant's motor vehicle.

In the no-fault act, a "motor vehicle" is defined as

a vehicle, including a trailer, operated or designed for operation upon a public highway by power other than muscular power which has more than 2 wheels. [MCL 500.3101(2)(c); MSA 24.13101(2)(c).]

However, when different statutes address the same subject or purpose they are considered *in pari materia,* and must be read together as constituting a single body of law. *State Bar of Michigan v Galloway,* 124 Mich App 271, 277; 335 NW2d 475 (1983), aff'd 422 Mich 188 (1985). Thus, we also look at the definition of vehicle found in the Michigan Vehicle Code:

"Vehicle" means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices exclusively moved by human power or used exclusively upon stationary rails or tracks and excepting a mobile home as defined in section 2 of

Act No. 419 of the Public Acts of 1976, being section 125.1102 of the Michigan Compiled Laws. [MCL 257.79; MSA 9.1879.]

The train engine is clearly excluded as a vehicle under the Vehicle Code. We reject defendants' contention that the train qualifies as a motor vehicle because it was being operated on a public highway when it entered the road crossing. A train operates on stationary rails within the railway company's right-of-way, not on a highway. See *Chesapeake & Ohio R Co v St Paul Fire & Marine Ins Co*, 701 F2d 573 (CA 6, 1983).

We next address the issue of whether the accident arose out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle. The test used to determine this issue was adopted by this Court in *Kangas v Aetna Casualty & Surety Co*, 64 Mich App 1, 17; 235 NW2d 42 (1975), lv den 395 Mich 787 (1975):

> [W]hile the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle.

In *Shaw v Allstate Ins Co*, 141 Mich App 331, 333-334; 367 NW2d 388 (1985), this Court summarized the line of cases that followed *Kangas*:

> Other decisions by this Court have held that a person assaulted while sitting in a motor vehicle is not entitled to no-fault benefits as herein sought. See, e.g., *Ciaramitaro v State Farm Ins Co*, 107 Mich App 68, 69-70; 308 NW2d 661 (1981), lv den 413 Mich 861 (1982) (plaintiff's decedent was killed

by an armed assailant while conducting his normal door-to-door produce business from his truck); *Detroit Automobile Inter-Ins Exchange v Higginbotham,* 95 Mich App 213, 221-222; 290 NW2d 414 (1980), lv den 409 Mich 919 (1980) (plaintiff forced to the curb by her estranged husband, trapped in her car, and then shot by her husband several times by a revolver); *Hamka v Automobile Club of Michigan,* 89 Mich App 644, 645; 280 NW2d 512 (1979) (plaintiff struck in the nose by a pedestrian's fist while plaintiff was sitting in his car at an intersection); *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526, 530; 280 NW2d 583 (1979), lv den 406 Mich 1014 (1979) (plaintiff shot in the hip while trying to evade an assailant entering the passenger side of his car). [Emphasis changed.]

The test was recently clarified in *Thorton v Allstate Ins Co,* 425 Mich 643; 391 NW2d 320 (1986). The Court indicated that the statute shows that the Legislature intended to provide coverage only where the causal connection between the injury and the use of a motor vehicle is more than incidental, fortuitous, or "but for."

In *Ricciuti v DAIIE,* 101 Mich App 683; 300 NW2d 681 (1980), the plaintiff was injured when his motorcycle skidded on a wet license plate lying on the pavement on an exit ramp. The plaintiff argued that his injuries arose out of the operation, maintenance, or use of a motor vehicle because the accident would not have occurred if the license plate had not fallen off of an automobile being driven on the highway. This Court held that, since the accident did not occur immediately after the license plate fell off the car, with the plaintiff following immediately behind, the mere fact that it had once been attached to an automobile did not supply a sufficient causal nexus between ownership, operation, maintenance or use of a motor

vehicle and plaintiff's injury under the *Kangas* standard.

*Peterson v Muskegon Co Bd of Road Comm'rs,* 137 Mich App 210; 358 NW2d 28 (1984), is a case with a factual situation more analogous to that in this case. In *Peterson,* the plaintiff was injured when his car hit a patch of ice and snow on the highway. The plaintiff alleged that the ice and snow were on the road because the defendant's snowplow pushed ice and snow down onto the highway while plowing the overpass above the road. In granting summary judgment to the defendant, the circuit court held that this allegation did not describe "operation of a motor vehicle." The plaintiff appealed, arguing that the court had incorrectly focused on the timing of the snowplowing and subsequent accident. This Court held that the proper issue was "whether, under all the facts alleged by a plaintiff, the injuries suffered by the plaintiff may, in fact, be said to have resulted from the negligent operation of a motor vehicle." *Id.,* pp 213-214. This Court concluded that, in that case, the plaintiff had really alleged that the defendant had negligently performed the act of snowplowing, rather than negligent operation of the snowplow.

In *Peterson,* the plaintiff was suing under MCL 691.1405; MSA 3.996(105), which abrogates governmental immunity for bodily injury or property damage resulting from negligent operation of a government-owned vehicle by a government agent or employee, rather than the no-fault act. However, the same reasoning may be applied to the facts of this case. Under the "time and place" test applied in *Peterson,* we find that it was not the operation of defendant's vehicle that caused the accident, but the residual effect of the act of plowing or grading the road. This distinction is crucial to the resolution of this issue. The opera-

tion of the blade truck was not the cause of plaintiff's property damage. Rather, it was the end result of the act of plowing the road that caused the train to derail. Therefore, plaintiff's damages do not arise out of the ownership, operation, maintenance or use of a motor vehicle and are not covered by the no-fault act.

Although this is a finely drawn distinction, the rules of statutory construction compel us not to give strained or technical interpretations to statutes. We feel that this result is more in keeping with the intent of the no-fault act. See *Shavers v Attorney General,* 402 Mich 554, 631; 267 NW2d 72 (1978).

Reversed.