NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0431n.06

No. 12-2201

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CITY OF WARREN, MICHIGAN; ROBERT SLAVKO; and RICHARD FOX, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | **FILED**<br>*Apr 30, 2013*<br>DEBORAH S. HUNT, Clerk |
| v. | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF |
| INTERNATIONAL INSURANCE COMPANY OF HANNOVER, LTD., | ) ) ) | MICHIGAN |
| Defendant-Appellee. | ) ) | |

Before:  MARTIN, GUY, and MCKEAGUE, Circuit Judges.

**BOYCE F. MARTIN, JR., Circuit Judge.**  This is an insurance-coverage dispute.  The City of Warren, Michigan sought insurance coverage from International Insurance Company of Hannover, Ltd., for defense expenses and costs related to a settlement the City reached in July of 2009 with C&R Maintenance, Inc., d/b/a Rizzo Services.  Hannover denied coverage, claiming that its insurance policy with the City contained an exception for costs and amounts paid as a result of a contractual breach by the City or its officials.  The City and two of its officials, Robert Slavko and Richard Fox, sued Hannover, alleging breach of contract, breach of implied covenant of good faith and fair dealing, and violation of Mich. Comp. Laws § 500.2006.  The district court granted summary judgment in Hannover's favor, and the City appealed the district court's judgment.  For the following reasons, we AFFIRM the district court's judgment.

I.

On October 22, 2001, the City and Rizzo executed a contract, whereby Rizzo agreed to transport the City's municipal waste. The contract required Rizzo to pay the City a royalty of $10,000 per month in exchange for use of the City's facilities to transfer waste that Rizzo transported for other customers. The contract required the City to use commercially acceptable best efforts to install and make operational an additional Direct Dump System by June 30, 2002, though the Contract did not define "Direct Dump System." A dispute between the City and Rizzo arose when Rizzo asserted that the Dump System was to include a third compactor to handle yard waste. Rizzo complained of increased costs and lost profits because the City failed to install and make operational the third compactor by the June deadline. Rizzo began to withhold its royalty payments from the City.

In May 2005, Rizzo sued the City in state court (Rizzo I), seeking a declaratory judgment that it owed no royalties to the City until thirty days after the Dump System was installed and fully operational. In January 2006, the judge dismissed the lawsuit without prejudice. In May 2006, the City informed Rizzo that it would begin withholding the $10,000 royalty payments from Rizzo's monthly invoices. Rizzo responded by sending documents to each member of the City Council, explaining how Rizzo's business had been adversely affected by the City's failure to comply with the contract. In an August 2006 letter, the City's counsel notified Rizzo's counsel that the City would immediately begin withholding $28,620.69 per month until the contract's expiration in October 2008.

In October 2007, Rizzo sued the City, Slavko, and Fox in federal district court (Rizzo II). Rizzo sought a declaratory judgment and alleged breach of contract, common law and statutory conversion, retaliation in violation of 42 U.S.C. § 1983, and conspiracy to retaliate. The judge refused to exercise supplemental jurisdiction and dismissed all claims except the section 1983 and conspiracy-to-retaliate claims. In December 2007, Rizzo filed a lawsuit in Macomb County Circuit Court (Rizzo III), and raised, among other claims, the state claims that the district court dismissed in Rizzo II. In February 2008, pursuant to an arbitration clause in Rizzo's contract with the City, Rizzo filed a Demand for Arbitration with the American Arbitration Association (Rizzo IV). The demand sought damages and a determination that the City materially breached its contract with Rizzo and that the contract be immediately terminated. In March 2008, Rizzo filed a Motion to Compel Arbitration in Rizzo III, and sought an order that all claims be transferred to and made part of the arbitration, and the judge in Rizzo III granted the motion.

In December 2008, the City contacted Hannover and requested a coverage opinion. On May 19, 2009, Hannover's third-party administrator, Specialty Claims Management, wrote to the City on Hannover's behalf and denied coverage. Among other defenses, Hannover relied upon Section I.C.18.e of the Policy, which provided that the Policy did not apply to "Public Officials' Errors and Omissions arising out of . . . [f]ailure to perform or breach of a contractual obligation . . . ." On June 19, 2009, the Arbitrator awarded Rizzo $6,419,580. He found that the City failed to use commercially acceptable best efforts to install and make operational the Dump System by June 30, 2002, that the Dump System was never operational, and that the City wrongfully withheld $683,276 in royalty payments from Rizzo.

Following the arbitration award, Rizzo and the City attempted to settle the dispute by way of mediation and on June 30, 2009, they reached a settlement that was placed on the record in Rizzo II. The settlement, in the amount of $5,975,000, was a global unallocated resolution of all claims. The City notified Hannover of the mediation in a letter dated June 25, 2009, but Hannover did not attend. In July 2009, the City Council passed a resolution to approve the settlement and it referenced the settlement of Rizzo II and Rizzo III. The judge in Rizzo II entered a Stipulated Order for Dismissal with Prejudice. The parties agreed among themselves not to enforce the arbitration award.

In January 2010, the City sued Hannover, claiming that its insurance policy with Hannover entitled it to defense costs related to the underlying litigation with Rizzo as well as indemnification for the settlement amount. The City sought a declaratory judgment and it brought claims of breach of contract, breach of implied covenant of good faith and fair dealing, and violation of Mich. Comp. Laws § 500.2006(1). Hannover moved for summary judgment and relied on several exclusions from the insurance policy. The district court granted Hannover's motion, finding that the insurance policy did not provide coverage because Exclusion 18.e applied.

## II.

We review a district court's grant of summary judgment de novo. *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir.2010). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir.2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)). "While all inferences are drawn in favor of the non-moving party, that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment." *Tucker v. Tennessee,* 539 F.3d 526, 531 (6th Cir. 2008).

III.

The City argues that Exclusion 18.e, which excludes from coverage "Public Officials' Errors and Omissions arising out of . . . breach of a contractual obligation . . ." does not apply to its section 1983 and conspiracy-to-retaliate claims. Specifically, the City argues that those claims do not "arise out of" its breach of the Rizzo contract. The City claims that, at the very least, the exclusion's language is ambiguous and must be construed in the City's favor.

Under Michigan law, a court determines whether an insurance policy is clear and unambiguous on its face. *Upjohn Co. v. New Hampshire Ins. Co.*, 438 Mich. 197, 206 (1991). Courts must construe ambiguous language in the insured's favor. *Fire Ins. Exchange v. Diehl*, 450 Mich. 678, 687 (1996). Nevertheless, courts may not create ambiguities where none exist. *Edgar's Warehouse, Inc. v. United States Fid. & Guar. Co.*, 375 Mich. 598, 602 (1965). Courts must reject the temptation to rewrite the plain and unambiguous meaning of a policy's terms under the guise of interpretation; instead, they must enforce the terms of the contract as written. *Upjohn*, 438 Mich. at 207. Courts must construe unambiguous terms according to their plain and commonly understood meaning. *Id*.

Under Michigan law, courts must construe exclusionary clauses in insurance policies strictly in the insured's favor. *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567 (1992). Nonetheless, clear and specific exclusions must be given effect. *Id*.

Michigan courts have discussed the meaning of the term "arising out of" in the context of automobile insurance policies. The Michigan Court of Appeals has held that in order for an injury to arise out of the ownership, maintenance or use of an automobile, "the automobile need not be the proximate cause of the injury." *Kangas v. Aetna Cas. & Surety Co.*, 235 N.W.2d 42, 50 (Mich. Ct. App. 1975). There must be a causal connection that is "more than incidental, fortuitous or but for," and the injury must be foreseeable. *Id*. The Michigan Supreme Court cited *Kangas* approvingly in *Thornton v. Allstate Ins. Co.*, 425 Mich. 643, 650-51 (1986).

Exclusion 18.e is unambiguous—it excludes from coverage errors arising out of the City's breach of a contractual obligation—and must be construed according to its plain meaning. Rizzo bases its section 1983 retaliation and conspiracy-to-retaliate claims on the City's withholding of royalty payments from Rizzo's monthly invoices following Rizzo's refusal to make the royalty payments. The City's breach—the failure to make the Dump System operational by the contractually mandated date—was bound to produce a dispute over royalty payments. Rizzo was not going to continue to make royalty payments for the use of facilities that the City had not made operational. Once the City breached, the chain of events that unfolded were predictable and arguably probable, including the City's alleged retaliation. The causal connection between the City's breach and its alleged retaliation is more than incidental, fortuitous or "but for;" the actions that gave rise to those claims were the natural and foreseeable result of the City's breach. Although the City argues that it made a number of other retaliation claims unrelated to the royalty payments, the City never pled those claims and it only referred to them in a Mediation Statement that it produced the day before the settlement. Under the plain meaning of "arising out of," as interpreted by the Michigan courts,

Rizzo's section 1983 and conspiracy claims arise out of the City's breach of its agreement with Rizzo.

IV.

The City argues that the district court erred in holding that Hannover merely had a duty to indemnify the City. The City claims that the "pay on behalf of" language from Section I.A.1. of the policy explicitly created a duty to advance defense costs rather than a duty to indemnify.

The following language from the City's policy with Hannover is relevant to the discussion of Hannover's duty:

**SECTION I – COVERAGE**

**A.      INSURING AGREEMENT**

1.      Subject to the other provisions of this policy, the Company will pay on behalf of the **Insured** that portion of the **Ultimate Net Loss** in excess of the **Retained Amount**, which the **Insured** shall have become legally obligated to pay as damages and related **Claims Expense** because of **Bodily Injury, Property Damage, Personal Injury** or **Public Officials' Errors and Omissions** to which this Insurance applies.

. . .

**B.      DEFENSE AND EXPENSE OF CLAIMS AND SUITS**

1.      The defense of claims or **Suits** to which this policy applies is the obligation of the **Insured**.

. . .

**SECTION V – DEFINITIONS**

**S.**      **Ultimate Net Loss** means all sums actually paid, or which the **Insured** is legally obligated to pay, as damages and **Claims Expense** in satisfaction of claims or **Suits** for which Insurance is afforded under this policy, after deduction of all collectible recoveries or salvage.

Michigan courts have not recognized the "pay on behalf of" language as imposing a duty to advance defense costs. Moreover, language from the policy indicates that Hannover's duty to pay costs is not strictly a duty to advance defense costs. Section I.A.1 requires Hannover to pay the Ultimate Net Loss in excess of the Retained Amount, and Section V.S defines the Ultimate Net Loss to include "all sums actually paid, or which the Insured is legally obligated to pay, as damages and Claims Expense" covered by the policy. If the policy meant to impose on Hannover a duty to advance defense costs, the Ultimate Net Loss would not mention sums actually paid and would only refer to sums that the Insured is legally obligated to pay. An insurance policy should be viewed as a whole and read to give meaning to all its terms, *Fresard v. Michigan Millers Mut. Ins. Co.*, 414 Mich. 686, 694 (1982), and a policy must be construed to give effect to every word or phrase as far as practicable. *Hunter v. Pearl Assurance Co.*, 292 Mich. 543, 545 (1940). Reading the policy as a whole and giving meaning and effect to all of its terms and phrases, the City's policy with Hannover contemplates both a duty to advance defense costs and a duty to indemnify.

The City argues in the alternative that the language is ambiguous and should be interpreted in its favor as requiring Hannover to advance defense costs. The City goes on to argue that the scope of Hannover's duty to advance defense costs is equivalent to that of the duty to defend, not the duty to indemnify. The significance of the City's argument lies in the fact that the duty to defend is broader than the duty to indemnify. *Am. Bumper and Mfg. Co. v. Hartford Fire Ins. Co.*, 452 Mich. 440, 450-51 (1996). The duty to indemnify arises only with respect to insurance afforded by the policy, whereas the duty to defend arises if a third party's allegations against the insured arguably come within policy coverage. *Id*. at 451. If the City is correct, and the scope of Hannover's duty to advance costs matches that of the duty to defend, then Hannover should have advanced defense costs, exceeding the Retained Amount, that related to all claims arguably coming within policy coverage.

Even if this Court were to accept the City's argument that the policy language is ambiguous and that one should interpret it as imposing a duty to advance defense costs, the policy language shows that the scope of the duty is equivalent to the scope of a duty to indemnify. First, Section I.B.1 explicitly provides that Hannover did not have a duty to defend, which relieved Hannover of the duty to pay defense costs associated with potentially covered claims. Requiring Hannover to advance costs associated with potentially covered claims, by holding that the scope of Hannover's duty to advance costs is the same as the scope of the duty to defend, would nullify much of the benefit that Hannover received from Section I.B.1. Second, the policy language about Hannover's duty to pay costs explicitly provides that the duty only attached to costs associated with claims that the policy covered. In particular, Sections I.A.1 and V.S state that Hannover's duty to pay costs

extended to claims "to which this insurance applies" and "for which insurance is provided by this policy." This Court holds that, viewing the policy as a whole and giving meaning and effect to every word and phrase, the policy language indicates that the scope of Hannover's duty to advance defense costs mirrored that of the duty to indemnify and only extended to costs actually covered by the policy.

To summarize, even if we accept that Hannover had a duty to advance defense costs, the terms of the policy mandate holding that the duty-to-indemnify standard applied and that Hannover's duty pertained only to covered claims. Given that we have already determined that the insurance policy did not provide coverage for any of Rizzo's claims against the City, Hannover did not breach any duty to advance defense costs that it possibly owed to the City; therefore, any error on the part of the district court in holding that Hannover owed a duty to indemnify was harmless.

V.

The City argues that Hannover waived its right to assert Exclusion 18.e.

Michigan law holds that, "[a]s a general rule, once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses." *Lee Evergreen Regency Coop. & Mgmt. Sys., Inc.*, 390 N.W.2d 183, 185 (Mich. Ct. App. 1986).

The City argues that Hannover denied coverage in a letter dated January 13, 2009, and that the letter did not provide any bases for the coverage denial. The City claims that Michigan law precludes Hannover from raising any new defenses after the January letter. Hannover's January letter, however, did not formally deny coverage; rather, it stated that Hannover authorized its counsel

to convey an offer of $100,000 to the City for full and final settlement of all claims regarding coverage that the City had against Hannover. Although the letter stated that Hannover "believe[d] there [wa]s no coverage afforded under any applicable insurance policy," it explained that this was Hannover's position "[b]ased upon the investigation to this moment." Hannover sent its denial-of-coverage letter, a comprehensive, thirteen-page letter from a claims adjuster for Specialty Claims Management, on May 19, 2009. The letter stated that it was written on Hannover's behalf and that Hannover denied the City's claim for liability coverage. The letter went on to explain, in great detail, the exclusions upon which Hannover based its denial of coverage, including Exclusion 18.e.

Even if Hannover had neglected to raise Exclusion 18.e in its formal denial letter, Michigan law provides that waiver and estoppel are unavailable to broaden coverage of a policy to protect the insured against risks that were not included in the policy or that were expressly excluded. *Kirschner v. Process Design Assocs., Inc.*, 459 Mich. 587, 593-94 (1999). The reasoning behind this rule is that "an insurance company should not be required to pay for a loss for which it has charged no premium." *Id*. at 594.

For the aforementioned reasons, we AFFIRM the judgment of the district court.