CHARLIE McNEILL *v.* MARYLAND INSURANCE
GUARANTY ASSOCIATION

[No. 931, September Term, 1980.]

*Decided April 10, 1981.*

The cause was argued before MASON, LISS and WILNER, JJ.

*Lee Gordon,* with whom were *Gordon & Goodman, P.A.* on the brief, for appellant.

*Stanford H. Franklin,* with whom were *Rocklin, Franklin & Karlin* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Appellee, Maryland Insurance Guaranty Association, filed a declaratory judgment action in the Superior Court of Baltimore City seeking a determination of automobile liability coverage under an insurance policy issued by the bankrupt Maryland Indemnity Insurance Company (hereinafter MIIC)· to its policyholder, Evelyn Watkins. Appellant, Charlie McNeill, answered the bill for declaratory judgment, and the parties agreed to submit the case on a stipulated statement of facts. That statement reads as follows:

> On September 2, 1975, Maryland Indemnity Insurance Company issued Policy No. A58318 to Evelyn Watkins for a 1968 Dodge Coronet, Serial No. WP46F8A2379106. That policy was in effect on December 12, 1975.
>
> On December 12, 1975, Charlie McNeill could not start his motor vehicle; whereupon he requested his friend, Evelyn Watkins, to bring her car to his location so that he could "jump-start" or "hot-shot" his car. Evelyn Watkins authorized Edward Hill to take her car to the aid of Charlie McNeill and he did so.
>
> Charlie McNeill connected the cables to the batteries of both cars and the Watkins car engine was running at all times, all at the explicit direction of Charlie McNeill. Charlie McNeill then took off one or more of the battery caps from the battery located in his vehicle. At this time, Edward Hill, who was not in any of the vehicles but was standing in the area as an observer, lit a match causing the battery in the McNeill vehicle to explode resulting in Charlie McNeill being seriously injured.

Negligence and the absence of contributory negligence are admitted and, therefore, are not at issue. The Maryland Insurance Guaranty Association, representing the bankrupt insurer Maryland Indemnity, has filed the Declaratory Judgment action seeking

determination of whether coverage may be afforded on the above policy to the claimant McNeill.

At oral argument before this Court the panel of judges hearing this case inquired whether the jumper cables were connected to both cars at all times pertinent; *i.e.,* whether the cables remained connected uninterruptedly from the time they were originally connected until the time the battery exploded. Counsel for the parties were unable to answer this question at argument. Several days later, however, a letter was received in which both parties stipulated that the answer to the query was "yes." Furthermore, the letter (signed by both parties) represented to the panel:

> Counsel also wish to bring to the Panel's attention, a clarification on the role of the match in causing the battery to explode. Counsel would agree that the lighting of a match which has absolutely nothing to do with the use or operation of a motor vehicle caused the explosion and . . . it is further necessary to point out that the lighting of the match caused an explosion not in the Watkins car, but in McNeill's car. It was McNeill's battery that exploded and it was caused by a match.
>
> Counsel, of course, disagree as to whether appellant's injuries given the factual situation in its totality, "arose out of . . . the use of the insured's vehicle."

We have accepted the added stipulation of the parties as an additional portion of the appellate record.[1]

The Watkins vehicle was covered by the aforementioned policy which provided in pertinent part:

---

1. In fairness to the trial court we point out that the judge did not have before him the additional facts elicited by the query of the panel on appeal. We, of course, cannot speculate as to whether the additional information would have affected the trial court's conclusion. We have concluded that we should not avail ourselves of the provisions of Maryland Rule 1071 which permits a remand to the trial court under these circumstances; rather, in the interest of judicial economy of time, we choose to dispose of the issue raised by this appeal.

Coverage A — Bodily Injury Liability; . . .

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, . . .
arising out of the ownership, maintenance or use of the owned automobile . . .

The trial judge, after consideration of the agreed statement of facts and memoranda of law submitted by the parties, held that the injury sustained by appellant did not arise out of the "ownership, maintenance or use" of the Watkins automobile and that MIIC was not liable to appellant under the terms of the Watkins policy. From this judgment, McNeill appeals.

The sole issue to be determined by this appeal is whether the injury sustained by the appellant was caused by an accident arising out of the "ownership, maintenance or use" of the Watkins vehicle.

The standard adopted by the Court of Appeals in the interpretation of provisions of an insurance policy where the disputed provision is susceptible to more than one construction is that the provision must be "literally construed in order to promote . . . recovery for innocent victims of motor vehicle accidents." *Pennsylvania National Mutual Casualty Insurance Co. v. Gartelman,* 288 Md. 151, 159, 416 A.2d 734 (1980). "Ownership, maintenance or use clauses" do not limit recovery solely to injuries that are caused by direct physical contact with the insured vehicle; nor is it necessary that the damages be directly sustained or inflicted by the operation of the motor vehicle. *See also State Farm Mutual Automobile Insurance Co. v. Maryland Automobile Insurance Fund,* 277 Md. 602, 356 A.2d 560 (1976); *Elliott v. Jamestown Mutual Insurance Co.,* 27 Md. App. 566, 342 A.2d 319 (1975).

Appellant contends that it is sufficient to establish liability and coverage where there is a substantial nexus between

the injury sustained and the use of the motor vehicle as contemplated by the insurance carrier and the insured.

Appellee argues that an automobile liability policy which provides coverage for accidents arising out of the "use" of a covered vehicle does not insure the owner of the vehicle unless it is shown that there is a causal connection between the use of the automobile and the accident, or the creation of the condition which caused the accident.

The Court of Appeals, in *Frazier v. Unsatisfied Claim and Judgment Board,* 262 Md. 115, 277 A.2d 57 (1971) had before it a factual situation in which a child of five years was a passenger in the rear seat of an open convertible vehicle which was being operated by the child's mother. An unidentified vehicle proceeding in the opposite direction passed the convertible and a lighted firecracker was thrown from the unidentified vehicle into the rear seat of the convertible. Distracted by the occurrence, the mother lost control of her car and struck a tree, severely injuring her child. The trial court concluded as a matter of law that the injuries did not arise out of the ownership, maintenance and use of the unidentified automobile. In reversing the trial court, the Court of Appeals held:

> 8 Blashfield, *Automobile Law & Practice* § 317.1 at 5-6 (Lewis ed. 1966); 7 Appleman, *Insurance Law & Practice* § 4317 at 144-6 (1942) and an Annotation, 89 A.L.R.2d 150 would seem to support the proposition that whether an injury is or is not within the coverage provided by an automobile insurance policy may well turn on the question whether the use of an automobile is directly or merely incidentally causally connected with the injury, even though the automobile itself may not have proximately caused the injury. Compare, for example, *National Indemnity Co. v. Ewing,* 235 Md. 145, 200 A.2d 680 (1964) (recovery allowed plaintiff, who fell from insured's car, and was injured while being escorted back to car on foot) and *Mullen v. Hartford Accident & Indemnity Co.,* 287 Mass.

262, 191 N.E. 394 (1934) (injury sustained from slipping on oil leaking from car held to be within provisions of policy) with *Commercial Union Ins. Co. of New York v. Hall,* 246 F. Supp. 64 (E.D.S.C. 1965) (no liability to plaintiff, whose way was blocked by insured's car and was then assaulted by insured) and *Kraus v. Allstate Ins. Co.,* 258 F. Supp. 407 (W.D. Pa. 1966), *aff'd,* 379 F.2d 443 (3d Cir. 1967) (insurer not liable to pedestrians when insured detonated dynamite in his car). [262 Md. at 118.]

The proposition had previously been established in *National Indemnity Co. v. Ewing, supra,* where recovery was permitted by a plaintiff who had been thrown uninjured from the insured car but had subsequently sustained injury when the insured driver negligently escorted the plaintiff back to the car on foot by leading the plaintiff down the center of the road. The Court permitted recovery under the insurance policy which provided for compensation of injuries arising out of the "ownership, maintenance or use" of the automobile, where it held:

Language in automobile liability policies, identical to that in the case before us, has been construed by the courts of other states, and it has generally been held that, while the words import and require a showing of causal relationship, recovery is not limited by the strict rules developed in relation to direct and proximate cause. * * * The same rule was applied in *Merchants Co. v. Hartford Accident & Indemnity Co.,* 188 So. 571, 572 (Miss.), where the injury was caused by poles negligently left in the road after the covered vehicle had been extricated from a ditch and had departed. The court said:

"Our conclusion, under a policy such as is here before us, is that where a dangerous situation causing injury is one which arose out of or had its source in, the use or operation of the automobile, the chain of responsibility must be

deemed to possess the requisite articulation with the use or operation until broken by the intervention of some event which has no direct or substantial relation to the use or operation, — which is to say, that the event which breaks the chain, and which, therefore, would exclude liability under the automobile policy, must be an event which bears no direct or substantial relation to the use or operation; and until an event of the latter nature transpires the liability under the policy exists." [235 Md. at 149-50.]

From our reading of the briefs submitted by the parties we find no appreciable dispute between the parties as to the applicable principles of law governing this case. Both sides concede that a causal relationship or connection must exist between an accident and the ownership, maintenance and use of the insured vehicle in order for coverage to be provided under the policy provision. They further agree that absent such a causal connection or relationship, recovery will be denied. *See* 89 A.L.R.2d 150. The problem arises as to the application of the law to the facts of the instant case.

Appellee relies heavily upon *Plaxco v. United States Fidelity & Guaranty Co.,* 252 S.C. 437, 166 S.E.2d 799 (1969), where an action was also sought in declaratory relief. The issue in *Plaxco* was whether the use by an insured of his automobile battery to crank the engines of his airplane by connecting the batteries with jumper cables constituted a use of an automobile within the meaning of the automobile liability insurance policy providing coverage arising out of the ownership, maintenance or use of any automobile. In *Plaxco,* the plaintiff drove his automobile to the airport for the purpose of making a trip in his airplane. The plane battery was either dead or too weak to start the engine so he drove his automobile to the left wing and connected the batteries of the plane to the auto by use of a jumper cable. When this was done he entered the plane, started the engine and engaged the brakes and alighted to disconnect the jumper cables, leaving the airplane engine running. After

the plaintiff disconnected one of the cables from the automobile battery, and while attempting to disconnect the other, the airplane brakes failed to hold and struck another aircraft. The court held that the accident did not result from the use of plaintiff's automobile, when it stated:

> The accident in question did not result from the use of plaintiff's automobile. The only connection between the automobile and the airplane was the use of the automobile battery to start the airplane engine. This purpose had been completed when the airplane moved forward, after the brakes failed to hold. We find nothing in the facts or circumstances to show a causal connection between the use of the automobile battery as a source of power to start the airplane engine and the subsequent forward movement of the airplane. As stated by the trial judge, "the power source was coincidental only." The facts show that the accident resulted from the use of the airplane and not the insured automobile. [252 S.C. at 441.]

We conclude that the facts in *Plaxco* are distinguishable from the case at bar. The use of the Watkins vehicle was clearly a use which was or should have been contemplated and anticipated by the insurance carrier and the owner of the vehicle. It is not unusual that an insured might on occasion be required to use his vehicle to charge the battery of another vehicle. At the time the explosion took place, the Watkins vehicle was still being used in an activity permitted by her policy. The additional stipulation makes it clear that the Watkins vehicle was still attached by the jumper cables to McNeill's vehicle at the time Watkins' driver negligently threw the match. McNeill's activity in unscrewing the battery caps was entirely consistent with an effort to determine whether the battery had sufficient fluid and charge to permit McNeill's car to operate without being attached to the jumper cables. The lighting of the cigarette by Watkins' driver was not an intervening or independent cause, as was

the failure of the airplane brakes in *Plaxco.* We conclude that this case on its facts is governed by *Merchants Co. v. Hartford Accident and Indemnity Co.,* 187 Miss. 301, 188 So. 571 (1939), where the Court held:

> In examining the cited cases, it will be observed that some of them proceed as if the automobile liability policy had expressly required that the injury for which the insurer could be held must be the proximate result of the use of the automobile truck. And if the policy here before us contained that express language, it might be that liability under the St. Paul Company policy in the present case would be denied on the ground that the proximate cause of the injury was the technically separable fact of the failure to remove the poles from the road. But we are in accord with the ruling expressed in Panhandle Steel Products Co. v. Fidelity Union Cas. Co. [Tex. Civ. App., 23 S.W.2d 799] . . . that an insurance contract such as we have here does not require that the injury must be the proximate result, in the strict legal sense of that term, of a negligent act which happened in the actual use or operation of the truck; and, on the other hand, we would not assent to a contention that the policy liability would extend to something distinctly remote, although within the line of causation.

> Our conclusion, under a policy such as is here before us, is that where a dangerous situation causing injury is one which arose out of or had its source in, the use or operation of the automobile, the chain of responsibility must be deemed to possess the requisite articulation with the use or operation until broken by the intervention of some event which has no direct or substantial relation to the use or operation, — which is to say, that the event which breaks the chain, and which, therefore, would exclude liability under the automobile policy, must be an event which bears no direct or sub-

stantial relation to the use or operation; and until an event of the latter nature transpires the liability under the policy exists. [188 So. at 572.]

Appellee would, in effect, have us adopt the strict rules of direct and proximate cause in order to deny coverage. This, in light of the opinions by the Court of Appeals which we have cited, we decline to do. Under the facts in this case we conclude that there was a causal relationship between the use of the Watkins vehicle to start McNeill's automobile and that the explosion was caused by the careless throwing of the match by Watkins' driver which ignited the fumes released when the battery caps were unscrewed. We find that at the time this occurred the Watkins vehicle was being "used" as contemplated by the Watkins liability insurance policy.

*Judgment reversed, costs to be paid by appellee.*