**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff/Appellant,**

v.

**Iuta NOLEN, as surviving widow of Bobby Joe Nolen, Ule Reynolds, a/k/a Ewell Davis, and Mamie Reynolds, Defendants/Appellees.**

Court of Appeals of Tennessee, Western Section at Jackson.

Jan. 19, 1993.

Application for Permission to Appeal Denied by Supreme Court April 26, 1993.

**38**

James T. Ryal, Jr., Adams, Ryal & Flippin, Humboldt, for plaintiff/appellant.

A. Wilson Wages, Alice L. Gallaher, A. Wages Law Firm, Millington, for defendant/appellee Iuta Nolen.

FARMER, Judge.

This appeal is from judgment affording liability coverage to Appellee Reynolds under the insurance policy issued him by Appellant.

Appellant State Farm Mutual Automobile Insurance Company ("State Farm") issued an automobile liability insurance policy to Appellee Ule Reynolds ("Reynolds") and wife, Minnie (Mamie) Reynolds. The policy insured the Reynolds's 1984 Buick LeSabre and contained the following language:

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:
   a. *bodily injury* to others, and

   .    .    .    .    .

   caused by accident resulting from the ownership, maintenance or use of *your car;* and
2. defend any suit against an *insured* for such damages....

On or about January 2, 1990, Bobby Joe Nolen, husband of Appellee Iuta Nolen, was working for the Lauderdale County Sheriff's Department when he answered the call to assist Reynolds, whose vehicle (the 1984 Buick LeSabre) had run off the road, becoming disabled. A wrecker was called to tow the Reynolds vehicle. Officer Nolen and another officer volunteered to transport Reynolds to town in the patrol car. The officers were in the process of transporting Reynolds back to the sheriff's department to get help for his vehicle when he pulled a gun and shot both officers, killing Nolen. The shooting occurred in the Lauderdale County Sheriff Department's car.

The Lauderdale County Circuit Court declared Reynolds incompetent to stand trial, in the criminal action brought against him, due to his mental illness. He was transferred to the custody of the Commissioner of Mental Health and hospitalized at the Western Mental Health Institute where he was diagnosed as suffering from primary degenerative dementia of the Alzheimer's type and delusions.

Nolen's widow filed a wrongful death action against Reynolds and his wife, seeking damages allegedly resulting from the incident. The suit against Mrs. Reynolds was subsequently dismissed for lack of personal jurisdiction.

State Farm then sought declaratory relief that the policy issued Reynolds did not afford coverage for the incident and that it had neither the duty to defend Reynolds nor the duty to pay any judgment rendered against him in the action by Mrs. Nolen.

In addition to the undisputed facts set forth above, the record reveals the following testimony of Mr. Dyson, the driver of the wrecker. Dyson testified that he was called to the scene of the disabled Reynolds vehicle where Nolen instructed him to tow the auto. When Dyson attempted to do so, Reynolds, who had remained in the car, became very irate. As Dyson reached into the car to shift the gear out of park, Reynolds grabbed Dyson's right hand tightly with his left hand. After assurance from Nolen that his car would not be damaged, Reynolds released Dyson. On two separate occasions, as Dyson attempted to tow Reynolds's car, Reynolds warned him not to touch his car. The officer with Nolen informed Reynolds that he was not under arrest, but that he would be given a ride into town so that he could seek assistance in getting his automobile repaired and contact relatives informing them of the situation. Reynolds got into the back seat of the patrol car. Nolen instructed Dyson to bring the car to the jail. While en route, the patrol car, following the wrecker, flashed its lights and pulled beside Dyson to inform him that the right side of Reynolds's car was hitting the pavement. Dyson stopped and attempted to open the trunk to adjust the weight of the contents of the trunk. Dyson's actions immediately caused Reynolds to begin screaming and shaking the patrol car. Dyson closed the trunk and Reynolds calmed. Once en route again, the patrol car passed the wrecker and sped down the highway. The patrol car was later found with the officers' bodies inside and Reynolds in the back seat.

The trial court entered judgment, declaring that "there was an accident resulting from the ownership and maintenance of the Reynolds' vehicle so that coverage exists for the actions of [Reynolds]."

State Farm filed a motion for an order amending the judgment, by providing a ruling on its motion for default judgment as to Mrs. Reynolds; by deleting the language stating that State Farm assumed or conceded that the shooting of Nolen by Reynolds was an accident; and by ruling that Nolen's death was not an accident resulting from the ownership, maintenance or use of Reynolds's vehicle.

The trial court denied the motion, but clarified in its Order that State Farm did not stipulate that the incident was an "accident," within the meaning of the policy, but that the court so found.

Appellant raises the following issue on appeal:

> Did the trial court err in holding that the shooting death of Bobby Joe Nolen was caused by accident resulting from the ownership, maintenance or use of Ule Reynolds's car?

The North Carolina Court of Appeals, in construing an insurance policy containing the language "arising out of the ownership, maintenance or use ... of an owned auto," defined "maintenance" as follows:

> The word "maintenance" used in this policy covers all acts which come within its ordinary scope and meaning. To maintain means to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse or cessation from that state or condition.... In a wide variety of situations the word "maintain" has been taken to be synonymous with "repair"....

*Walsh v. National Indem. Co.*, 80 N.C.App. 643, 343 S.E.2d 430, 433 (1986) (quoting *Morris v. American Liab. and Sur. Co.*, 322 Pa. 91, 94, 185 A. 201, 202 (1936)).

The trial court, in the instant case, found:

> [T]hat "ownership and maintenance" as used in the policy cover all acts which come within the ordinary scope and meaning of those words; that it was or should have been contemplated and anticipated by the insurance carrier and the owner of the vehicle that the vehicle might become disabled and need towing. That the towing required the owner to ride in another vehicle as an incident to the maintenance of the vehicle and was consistent with an effort to prevent a decline or cessation of an existing condition of the vehicle as contemplated by the definition of the words maintenance and ownership. That the towing and

opening of the trunk of his vehicle to determine if the weight could be shifted to facilitate the towing, enraged [Reynolds]; and that the resulting shooting originated from, had its origin in, grew out of or flowed from the maintenance and ownership of the vehicle.[1]

For reasons hereinafter stated, we reverse the judgment of the lower court and hold that the tragic shooting death of Nolen did not result from the "ownership" and "maintenance" of Reynolds's vehicle.

The trial court's decision was based on its finding of a "sufficient causal connection between the vehicle and injury." It is well settled in Tennessee that a relationship (causal connection) must exist between the ownership, maintenance or use of the vehicle and the resulting injury; this connection, however, need not be a direct proximate causal relationship. *See Travelers Ins. Co. v. Aetna Casualty and Sur. Co.,* 491 S.W.2d 363 (Tenn.1974); *Almany v. Nationwide Ins. Co.,* No. 85–341–II (Tenn. Ct.App. Jan. 29, 1987) (1987 Westlaw 4745).

In *J.T. Hinton and Son v. Employers' Liab. Assurance Corp.,* 166 Tenn. 324, 62 S.W.2d 47 (1933), our supreme court held:

> To justify recovery ... it is not necessary that the peril insured against be the cause of the loss in the sense that it is the nearest cause in point of time or place. If the peril insured against be the *efficient, predominating cause of the loss,* it is regarded as the proximate cause thereof, although the result was brought about by train of events set in motion by the particular peril and operating with reasonable certainty to occasion the loss.

*Hinton,* 166 Tenn. at 328, 62 S.W.2d 47 (emphasis added) (quoting *Maness v. Life and Casualty Ins. Co.,* 161 Tenn. 41, 28 S.W.2d 339 (1930). *See also, Travelers Ins. Co. v. Aetna Casualty and Sur. Co.,* 491 S.W.2d 363 (Tenn.1973) (homeowner's policy excludes coverage for "use" of automo-

bile if that "use" is efficient, predominating cause of loss). We hold that the maintenance of the vehicle, in the instant case, was not the efficient, predominating cause of Nolen's death.

In *Anderson v. Bennett,* 834 S.W.2d 320, 322–23 (Tenn.App.1992), this Court determined that injuries sustained by an insured when an angry driver discharged a firearm in the direction of a group of children did not arise out of the "use" of the vehicle and cited with approval a decision rendered by the Michigan Court of Appeals, *Kangas v. Aetna Casualty and Sur. Co.,* 64 Mich. App. 1, 235 N.W.2d 42 (1975). *Kangas* held:

> [T]hat while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle.

*Kangas,* 235 N.W.2d at 50. *E.g., Nationwide Mut. Ins. Co. v. Brown,* 779 F.2d 984, 989 (4th Cir.1985).

In *Kangas,* several passengers riding in the vehicle of the insured assaulted a pedestrian. *Kangas,* 235 N.W.2d at 43. The court found no "causal connection" and held that assaults are not normal foreseeable occurrences in the "use" of a vehicle. *Id.* at 50. *Kangas* held that "[t]he fact that the automobile came upon the pedestrian was purely fortuitous and incidental. The use of the vehicle had no connection with the unexpected subsequent altercation between the passenger and the pedestrian." *Id.* We agree with the reasoning of *Kangas* and, likewise, hold that assaults are not normal foreseeable consequences in the "ownership" and "maintenance" of a vehicle. Nolen's assistance in the towing of Reynolds's car was purely fortuitous and incidental. There was no causal con-

---

1. Conversely, the trial court found that the shooting did not result from the "use" of Reynolds's auto because he was not using his vehicle for transportation at the time of the shooting and the driving of his vehicle did not facilitate the shooting. The removal of Reynolds from his car constituted and "intervening act" that broke the causal nexus between the vehicle and the shooting.

nection between the maintenance of Reynolds's auto and his subsequent unexpected actions.

Similarly, in *Coleman v. Sanford,* 521 So.2d 876 (Miss.1988), the insured, driving his vehicle while extremely intoxicated, shot through the windshield of plaintiff's moving vehicle, seriously injuring plaintiff. *Coleman,* 521 So.2d at 877. The Mississippi Supreme Court concluded that the shooting was a voluntary, deliberate act, which rendered the use of the vehicle incidental. *Id.* at 877. We, likewise, conclude that the shooting of Nolen was a deliberate act, rendering the maintenance of Reynolds's vehicle incidental.

Appellees, as well as the trial judge, in his opinion, cite several cases holding that the injuries sustained arose from the "maintenance" of the insured vehicle. *See, Morris v. American Liab. and Sur. Co.,* 322 Pa. 91, 185 A. 201 (1936) (plaintiff injured as insured's employee hammered rim of wheel into place after repairing tire on insured vehicle); *Wall v. Windmann,* 142 So.2d 537 (La.Ct.App.1962) (insured mechanic's employee injured when mechanic, while making adjustments to truck, negligently started it while in gear, causing it to strike employee); *Knight v. Thomas,* 141 So.2d 134 (La.Ct.App.1961) (plaintiff injured when sliver of steel entered his eye as insured attempted to dislodge bearing from axle by striking axle with cold chisel and hammer); *Alabama Farm Bureau Mut. Casualty Ins. Co. v. Tubbs,* 293 Ala. 432, 304 So.2d 589 (1974) (act of setting fire to garage with welding torch by car owner while underneath auto welding bracket to it was act of "maintenance"). We find the factual situations in these cases dissimilar to the case presently before this Court. In all those cited, the accident or injury occurred during the act of "maintenance." In the instant case, there was no actual maintenance taking place at the time of the shooting. The shooting was wholly independent and not a causal result of the maintenance of Reynolds's vehicle.

Appellees also cite *McNeill v. Maryland Ins. Guar. Ass'n,* 48 Md.App. 411, 427 A.2d 1056 (1981). There the court held that injuries sustained when a battery exploded, while the battery was connected by cables to the battery of the insured's vehicle, after a third person lit a match and the victim had removed one of the battery caps, arose out of the ownership, maintenance or use of the insured vehicle. *McNeill,* 427 A.2d at 1061. *McNeill* held that the victim's use of the insured vehicle "was clearly a use which was or should have been contemplated and anticipated by the insurance carrier and the owner of the vehicle." *Id.* 427 A.2d at 1060. *McNeill* further concluded that the lighting of the cigarette by the driver of the insured vehicle was not an intervening or independent cause. *Id.*

In the instant case, the trial court held that the possibility of Reynolds's vehicle becoming disabled, requiring towing, was or should have been contemplated and anticipated by State Farm and Reynolds. This Court concedes that the possibility of Reynolds's car needing to be towed on occasion was no doubt within the contemplation of both parties. However, we decline to hold that the shooting death of Nolen was either contemplated or anticipated by State Farm. We think it illogical to hold State Farm responsible for all acts taken by Reynolds merely because his vehicle was in need of towing.

Upon interpretation of the phrase "resulting from the ownership, maintenance, operation or use" of an automobile, our supreme court, in *Hinton,* held that "this general and broad language must be construed with reference to the ... nature of the risk involved, with due regard to the ... intentions of the parties...." *Hinton,* 166 Tenn. at 327, 62 S.W.2d 47 (citing 1 Couch, Cyc. of Ins. Law, § 174). We conclude that the shooting incident was not a foreseeable risk, intended to be insured against, by either party and that it was an intervening cause of Nolen's death.

For all the foregoing reasons, we hold that the shooting death of Nolen was not an accident resulting from the "ownership" and "maintenance" of the Reynolds vehicle.

The judgment of the trial court is reversed and this cause remanded for further proceedings consistent with this opinion.

Costs are taxed to Appellees for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.